[Civ. No. 24763. Second Dist., Div. One. Mar. 28, 1961.]

ELIOT DANIEL et al., Appellants, v. BOARD OF POLICE COMMISSIONERS OF THE CITY OF LOS ANGELES et al., Respondents.

[Civ. No. 24707. Second Dist., Div. One. Mar 28, 1961.]

MIRAMAR ENTERPRISES, INC., Appellant, v. BOARD OF POLICE COMMISSIONERS OF THE CITY OF LOS ANGELES et al., Respondents.

Wirin, Rissman, Okrand & Posner, Fred Okrand, Paul M. Posner, Carl B. Sturzenacker and Walter Monarch for Appellants.

Roger Arnebergh, City Attorney, Philip E. Grey, Assistant City Attorney, and Arthur Karma, Deputy City Attorney, for Respondents.

WOOD, P. J.—By stipulation the above entitled actions were consolidated for trial. The plaintiffs in those actions, as taxpayers, sought to enjoin the defendants from using public funds to administer or execute the provisions of section 103.102 of the Los Angeles Municipal Code. The alleged basis for seeking the injunction was that the section, on its face, is unconstitutional. In the Daniel case, the plaintiffs also alleged that sections 103.29 and 103.31, as applied to said section 103.102, are unconstitutional, and that the unconstitutionality appears on the face of each section. In each action the judge decided that the sections are constitutional; and in each action judgment was in favor of defendants.

The plaintiffs (or plaintiff) in each action appeal from the judgment. By stipulation the two actions were consolidated for purposes of appeal.

The sections of the Municipal Code above referred to are in Ordinance Number 111348, and a copy of that ordinance was received in evidence. No oral evidence was presented at the trial. The records on these appeals consist of the clerk's transcripts.

Section 103.102 of said code provides, in part: "Cafe Entertainment. (a) *Permit Required.* No person shall operate, conduct, or manage any public place where food or beverages are sold, offered for sale or given away, and where any form of live entertainment is provided or furnished without a

written permit from the Board [Board of Police Commissioners].

"(b) *Exemptions.* No permit hereunder shall be required of any bona fide charitable, religious, benevolent, educational organization, United Service Organization, or of persons holding permits required by Sections 103.106 and 103.114 of this Code."

Subsection "(c)" of said section 103.102, entitled "Public Hearings," provides for a public hearing relative to issuing such a permit, and for notice of such hearing, and for making protests.

Section 103.29 of said code provides, in part: Board Action on Application. After an investigation the Board may either: (a) *Issue or Renew Permit.* Issue or renew permit if the Board finds that the operation of the trade, occupation, or business by the applicant will comport with the peace, health, safety, convenience, good morals, and general welfare of the public; or

"(b) *Deny Permit.* Deny the permit or refuse to renew the permit if the Board finds that the said operation will not comport with the peace, health, safety, convenience, good morals, and general welfare of the public or that facts exist upon which a denial of such permit would be authorized pursuant to this Article."

Miramar Enterprises, Inc., the plaintiff in one of the actions, had applied for a permit under the provisions of said section 103.102; and the application was denied on the ground that the operation of the applicant's business does not and will not comport with the peace, health, safety, convenience, good morals, and general welfare of the public.

As shown by the pretrial "Agreed Facts," the plaintiff Miramar Enterprises has been and now is duly licensed by the State of California to sell alcoholic beverages at its place of business in Los Angeles.

In the Daniel action, the plaintiffs alleged that they were taxpayers; that the plaintiff Tranchitella is president of the Musicians Mutual Protective Association, Local (Union) 47, which association has many members who make their living as entertainers by playing musical instruments in public places in Los Angeles where food and beverages are sold; that plaintiffs are informed and believe that the defendants, pursuant to said section 103.102, have granted, denied, revoked, and suspended permits of "places" in Los Angeles where food and beverages are sold and where live entertainment is provided,

and that defendants "seek to continue to so do"; that in so acting the defendants have expended public funds in various ways (specified in the complaint); that unless restrained the defendants will continue to expend public funds illegally (by reason of the unconstitutionality of said sections) to the irreparable damage of the taxpayers.

The merits of the decisions of the board of police commissioners with respect to permits are not involved on these appeals. The sole question here is whether the sections are constitutional.

Appellants' principal contentions are: (1) By those sections the city council attempted to legislate in a field that has been preempted by the State of California. (2) The enforcement of those sections is an unreasonable exercise of the police power. (3) The sections violate the equal protection clause of the 14th Amendment of the United States Constitution; and violate provisions of the California Constitution which require uniformity of treatment (art. I, §§ 11 and 21; art. IV, § 25, paragraphs 19 and 33). (4) The sections violate the due process of law clauses of the United States Constitution and the California Constitution.

The California Constitution provides that "The State of California . . . shall have the exclusive right and power to license and regulate the . . . sale . . . of intoxicating liquor. . . ." (Art. XX, § 22.) The Alcoholic Beverage Control Act (Bus. & Prof. Code, §§ 23000 et seq.) contains detailed provisions or rules relative to issuing liquor licenses and regulating the operation of liquor establishments and disciplining licensees. "Any . . . city . . . may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws." (Cal. Const., art. XI, § 11.) ██ "The mere fact that a state law contains detailed and comprehensive regulations of a subject does not, of itself, establish the intent of the Legislature to occupy the entire field to the exclusion of local legislation." (*People* v. *Commons*, 64 Cal.App.2d Supp. 925, 931 [148 P.2d 724].) ██ Said section 103.102 of the Los Angeles Municipal Code provides in substance that no person shall operate any public place where food or beverages are sold and where any form of live entertainment is provided, without a written permit from the board of police commissioners. It is apparent that the state has preempted the area of regulating the sale of liquor. The Constitution and the Alcoholic Beverage Control Act do not mention the matter of issuance of a liquor license in con-

junction with restaurant entertainment. It does not appear that the Legislature intended that a person who is licensed to sell liquor should be immune from supervision, by local government, of any other activity the licensee might pursue in conjunction with the sale of liquor. Section 103.102 is directed toward any and all business establishments which sell or give away food or beverages and have "live" entertainment. It applies to any such establishment regardless of whether it is in the liquor business. A denial of a liquor licensee's application for a permit to have "live" entertainment in his liquor establishment would not affect his right under his liquor license to sell liquor. In *People* v. *Commons, supra,* 64 Cal. App.2d Supp. 925, it was said at page 932 (in quoting from *In re Hoffman,* 155 Cal. 114, 118 [99 P. 517, 132 Am.St.Rep. 75]) : " 'The state in its law deals with all of its territory and all of its people. The exactions which it prescribes operate (except in municipal affairs) upon the people of the state, urban and rural, but it may often, and does often happen that the requirements which the states see fit to impose may not be adequate to meet the demands of densely populated municipalities; so that it becomes proper and even necessary for municipalities to add to state regulations provisions adapted to their special requirements.' " It is apparent that the purpose of the sections is not to regulate the liquor business but is to regulate the kind of "live" entertainment that is furnished in such public places as restaurants and liquor establishments. The state has not preempted the field or area covered by said section 103.102 and said other section of the municipal code.

The ordinance is a valid exercise of the police power. As stated in *Justesen's Food Stores, Inc.* v. *City of Tulare,* 43 Cal.App.2d 616, at page 621 [111 P.2d 424] : "A legislative body, in the exercise of its police power, has a broad discretion to determine both what public interests are and the measures necessary for the protection of such interests. The determination of the need for a mode of exercising the power is primarily for the legislative body and the courts will not hold enactments invalid unless they are palpably unreasonable, arbitrary or capricious, having no tendency to promote the public welfare, safety, morals, or general welfare. Every presumption is in favor of the reasonableness of the law and its validity. A court is not concerned with the wisdom or policy of the law and cannot substitute its judgment for that of the legislative body. If

reasonable minds might differ as to the reasonableness of the regulation, the law must be upheld.''

A question arises as to whether there is an improper and unreasonable classification as between ''live entertainment,'' composed of live performers who are present, and ''canned'' or ''recorded'' entertainment, such as juke boxes, radio, and television where no performer is present. It is clear that there is a natural and intrinsic distinction between the two kinds of entertainment. It is also clear that the character of entertainment and the manner in which it is presented by an entertainer does have a direct bearing on public morals and welfare. The presentation of ''live'' entertainment presents a far more difficult police problem than ''recorded'' entertainment where no performer is present. It is reasonable to conclude that the city council, by the legislation here involved, intended to prevent places of ''live'' entertainment from becoming public nuisances and to prevent unfit persons from corrupting public morals by improper entertainment. In *Ex parte Tuttle,* 91 Cal. 589, it was said at page 591 [27 P. 933] : ''The measures needful or appropriate to be taken in the exercise of this police power are determined by legislative policy, and for this purpose a wide discretion is committed to the law-making body. Whether it shall entirely prohibit or only regulate by confining such practices within prescribed limits,—whether the law shall apply to every kind of gambling, or only to those games or wagers in which evil effects appear with greatest prominence,—must be determined primarily by the legislative department of the state, or of the municipality authorized to exercise this great power, which is conferred for the purpose of securing the public safety and welfare; and unless it clearly appears that a statute or ordinance ostensibly enacted for this purpose has no real or substantial relation to these objects, and that the fundamental rights of the citizens are assailed under the guise of a police regulation, the action of that department is conclusive.''

As above indicated, it is obvious that the purpose of the ordinance is to protect public morals. The classification between ''live'' entertainment and ''recorded'' entertainment in such establishments is a reasonable classification and is reasonably related to the purpose of the ordinance.

Appellants contend that the ordinance is invalid because there is improper classification in that it exempts certain organizations from the requirements that a permit be

obtained. They refer to section 103.102(b), above quoted, which provides: "No permit shall be required of any bona fide charitable, religious, benevolent, educational organization . . . ." This section places nonprofit organizations in a different classification from organizations or persons engaged in commercial enterprises for profit. It cannot be said that the section, by reason of such classification, is so arbitrary that it violates the equal protection clause of the federal Constitution or that it violates the state Constitution. With reference to public morals, there is an extrinsic difference between the classifications.

Appellants also contend that the ordinance is vague, uncertain, and indefinite and establishes no definite or ascertainable standards upon which the board of police commissioners may grant, deny, or revoke a permit; and the standards set forth in the ordinance allow arbitrary discretion by the board. They assert that the language of the ordinance is so broad and meaningless that its effect is to vest in the board arbitrary discretion, with the result there is lack of due process of law; and that the ordinance does in effect delegate governmental power to an administrative body (the board) with absolute discretion in exercising the authority, and does not establish a standard to guide the administrative body. Appellants refer to certain sections of the ordinance which state conditions upon which the board may deny or revoke a permit, and they assert that those sections are examples of vague and indefinite provisions which violate due process of law. One section so referred to is section 103.29(b) which states: ". . . if . . . the said operation will not comport with the peace, health, safety . . . good morals, and general welfare of the public . . . ." Another section referred to as such an example is section 103.31(c)(1) which states: "The applicant is unfit to be trusted with the privileges granted by such permit, or has a bad moral character, intemperate habits or a bad reputation for truth, honesty, or integrity." They argue to the effect that such expression therein as "good morals," "general welfare," "unfit to be trusted," and "bad moral character," are without meaning other than an evaluation solely in the opinion of the board. Various sections of Ordinance Number 111348 specify acts that must be done by the board in connection with granting, denying, or revoking a permit. Section 103.28 states that, "the Board shall investigate applications for permits . . . ." Section 103.29 states: "[A]fter an investigation the Board may either (a) Issue or renew a

574

permit. Issue or renew the permit if the Board finds that the operation of the trade, occupation, or business by the applicant will comport with the peace, health, safety, . . . good morals, and general welfare of the public; or (b) Deny permit. Deny the permit or refuse to renew the permit if the Board finds the said operation will not comport with the peace, health . . . , or that facts exist upon which a denial of such permit would be authorized pursuant to this Article.'' Such facts so referred to are specified in section 103.31 and include personal disqualifications of the applicant (§ 103.35), which include knowingly making any false or misleading statement of a material fact in an application for a permit; being convicted of a felony or any crime involving theft, embezzlement or moral turpitude; and committing an unlawful false, deceptive or dangerous act while conducting a ''permitted'' business. Sections 103.32 and 103.33 provide that the applicant has a right to be heard when he is informed of the board's intention to deny the application. Sections 102.00 and 102.22 provide for procedural steps at the hearing. It thus appears that the ordinance furnishes many guides for the board in considering matters with respect to a permit. ▮ In *Wheeler* v. *Gregg,* 90 Cal.App.2d 348, it was said at page 362 [203 P.2d 37] : ''The essential requirement of due process is met when the administrative body is required to determine the existence or nonexistence of the necessary facts before any decision is made. Such a discretion is not arbitrary or so unguided as to invalidate the statute or ordinance [citations].'' ▮ In *People* v. *Deibert,* 117 Cal.App.2d 410, it was said at page 418 [256 P.2d 355] : '' 'To make a statute sufficiently certain to comply with constitutional requirements [of due process of law] it is not necessary that it furnish detailed plans and specifications of the acts or conduct prohibited.' '' (See also *People* v. *Loignon,* 160 Cal.App.2d 412, 419 [325 P.2d 541].) ▮ Sufficient rules to guide the board are included in the ordinance. The ordinance does not violate due process of law provisions of the federal Constitution or the state Constitution.

The said sections 103.102, 103.29, and 103.31 of the Los Angeles Municipal Code are constitutional.

The judgments (in the two actions) are affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied April 14, 1961, and appellants' petition for a hearing by the Supreme Court was denied May 24, 1961.