*Supp. 10 Opinion
COLE, P. J.
—In People v. Stephenson the People appeal from an order of the court granting a defense motion in arrest of judgment. In 46 other cases which we have consolidated for purposes of argument and decision, the People appeal from orders dismissing the actions after demurrers were sustained. Each of the 47 cases involves the constitutionálity of section 103.103.1 of the Los Angeles Municipal Code. That section requires that a permit be issued by the board of police commissioners before anyone can operate a “social club.” The trial courts involved here concluded that the section was unconstitutional. We agree and affirm.
The ordinance in question reads as follows:
“SEC. 103.103.1
“(a) Definition. Social Club means any roojm, house or building to which any person as an individual or as a member or guest of any organization whatsoever may resort or attend for purposes of amusement, recreational or social activities of any kind or description, and where
“(1) Any fee, money or thing of value or check or counter in lieu of money, shall be paid to or received by the person, firm, association or corporation operating, carrying on, conducting or maintaining said room, house or building, or any amusement, recreational or social activities therein, prior to, following or during the course of participation in any such activities or for the privilege of engaging in any amusement, recreational or social activity, or
“(2) Memberships or any interest or share in said room, house or building, or in the person, firm, association or corporation, maintaining, operating, carrying on or conducting said activities, or in the maintenance, operation, carrying on or conducting of any or all of said amusement, recreational or social activities, are sold or in any manner transferred or exchanged for money or thing of value or check or counter in lieu of money for the privilege of engaging in any or all of such activities; or
“(3) Any monetary benefits derived from such amusement, recreational or social activity insures to any individual, shareholder, member, or organization without first having been granted a permit so to do by the Board.
*Supp. 11 “(b) Requirements of Building or Premises. No permit under this section shall be issued or granted to any person to operate, maintain, conduct or carry on any Social Club, as defined herein, in any building or premises which has more than one door to be unlocked to gain admission to any room therein, or which has an entrance equipped with a transparent mirror, other polarized material or controlled lighting whereby persons outside cannot see inside, or which has any kind of sound or sight signal system which can be used to warn or give warning of the presence of any police officer to any person or persons in or about such premises.
“(c) Permit. No person shall maintain, operate, conduct or carry on any social club or knowingly suffer or permit the maintenance or operation of the same within or upon premises maintained, operated or controlled by him without a permit from the Board.
“(d) Exceptions. No permit shall be required under this section for any amusement, recreational or social activity:
“(1) For which a valid permit has been issued by the Board under other provisions of Chapter X of this code for activities actually being conducted at the same location during the same period of time; or
“(2) Which is operated by a state, county or federal governmental body; or
“(3) Which is maintained, operated, conducted or carried on in premises duly licensed under Division 9, Chapter 3, Article 1, 3, 4 or 5 of the Business and Professions Code of California to engage in the sale or service of alcoholic beverages; or
“(4) For which tickets of admission are sold to the general public and which ticket of admission permits observation of any and all rooms in which any amusement, recreational or social activity is operated, maintained, conducted or carried on; or
“(5) Of any bona fide non-profit organization, such as a United Service Organization, Boy Scouts Of America, a charitable, religious, benevolent, civic or educational organization.
“(e) Games Prohibited by Law. No permit issued by the Board shall authorize the operation, maintenance, conduct or carrying on of any activity which is prohibited by state law or ordinance of the City of Los Angeles. Any permit issued in violation of this subsection shall be void.
*Supp. 12 “(f) Public Hearings. The Board may require a public hearing prior'to taking action on an application for a permit pursuant to this section. The applicant shall cause to be published a notice of public heaping two times at intervals of not less than five days, within the 21-day period following the filing of an application, in a newspaper of general circulation in the district where the business is to be located. Furthermore, the Board may give notice by mail to all property owners within three hundred feet of the proposed business. The Board shall cause a suitable public notice to be posted at the location where the business is to be conducted. The applicant shall bear all expenses involved in mailing, printing, publishing;, and posting such notice. Such public notice shall conform to the rules and regulations adopted by the Board and shall be designed to inform the public as to the nature of the business to be engaged in; its location, the names of the applicant or applicants, the time of the public hearing and the right of persons objecting to be heard. Any interested person may file written protests or objections, or appear at the hearing. The Board shall give consideration to all such protests in reaching a decision on such application.”
The ordinances which set the standards for the granting of a license of this type are Los Angeles Municipal Code sections 103.29 and 103.31 which read as follows: • ■
“SEC. 103.29.
“After an investigation, the Board may: ■
“(a) Issue Permit. Issue the permit if the Board finds that the operation of the trade, occupation or business by the applicant will comport with the peace, health, safety, convenience and general welfare of the public;
“(b) Issue Permit—Limit or Condition. Issue the permit subject to limitations or conditions if the Board finds that such limitations or conditions on the operation of the trade, occupation or business by the applicant will comport with the peace, health, safety, convenience and general welfare of the public; or
“(c) Deny Permit. Deny the permit if the Board finds that the said operation will not comport with the peace, health, safety, convenience and general welfare of the public or that facts exist upon Which a denial of such permit would be authorized pursuant to this Article.” !
*Supp. 13 “SEC. 103.31.
“(a) Ground for Denial—Prohibited by Law. The Board shall not issue a permit for a business prohibited by any local or state law, statute, rule or regulation, or prohibited in the particular location by the provisions of Chapter 1 of this Code.
“(b) Ground for Denial—Nuisance. The Board shall not issue a permit for a business which has been or is a public nuisance.
“(c) Further Grounds for Denial. The Board may deny a permit on any of the following grounds:
“1. The applicant is unfit to be trusted with the privileges granted by such permit, or has a bad moral character, intemperate habits or a bad reputation for truth, honesty or integrity;
“2. The applicant is a person under the age of 18 years;
“3. The applicant, his agent or employee, or any person connected or associated with the applicant as partner, director, officer, stockholder, associate, or manager has committed or aided or abetted in the commission of any act or act of omission which, if committed by a permittee, would be a ground for disciplinary action under this Article; or
“4. The applicant, his agent or employee, or any person connected or associated with the applicant as partner, director, officer, stockholder, associate or manager has been refused a permit or had a permit revoked or has been an officer, director, member, partner or manager of any person who has been refused a permit or had a permit revoked by the Board.”
The People place most of their reliance on Sunset Amusement Co. v. Board of Police Commissioners (1972) 7 Cal.3d 64 [101 Cal.Rptr. 768, 496 P.2d 840]. However, Sunset Amusement dealt with the denial of renewal permits to run a roller rink. Though it stated that the standards for issuing the permit, those of Los Angeles Municipal Code section 103.29, were sufficiently specific to comport with due process, that holding was based on the finding that the statute applied only to activity not protected by the First Amendment. The pertinent language of Sunset Amusement (7 Cal.3d at pp. 72-73) is as follows:
“A municipality has broad power to enact ‘all local, police, sanitary, and other ordinances and regulations not in conflict with general laws.’ (Cal. Const., art. XI, § 7.) An ordinance so enacted will ordinarily be *Supp. 14 upheld if ‘it is reasonably related to promoting the public health, safety, comfort, and welfare, and if the means adopted to accomplish that promotion are reasonably appropriate to the purpose. [Citations.]’ (Higgins v. City of Santa Monica, 62 Cal.2d 24, 30 [41 Cal.Rptr. 9, 396 P.2d 41].) The requirement that a license first be obtained before conducting a business or activity has long been recognized as a valid exercise of the police power. (Burton v. Municipal Court, 68 Cal.2d 684, 690 [68 Cal.Rptr. 721, 441 P.2d 281]; In re Fuller, 15 Cal.2d 425, 431 [102 P.2d 321].)
“Nevertheless, where First Amendment activities are involved, this court has subjected licensing ordinances to strict scrutiny. (See Perrine v. Municipal Court, 5 Cal.3d 656, 661-663 [97 Cal.Rptr. 320, 488 P.2d 648]; Dillon v. Municipal Court, 4 Cal.3d 860, 866 [94 Cal.Rptr. 777, 484 P.2d 945]; Burton v. Municipal Court, supra, 68 Cal.2d 684, 690-697.) In Burton, we were faced with the validity of the same subdivision of section 103.29 (then subd. (b)) involved herein, as applied to an exhibitor of motion picture films to the public. In our analysis of the constitutionality of that subdivision we noted that ‘The crucial factor here is our zealous solicitude for rights falling within the protection of the First Amendment,’ since in that category of cases, ‘ “ ‘precision of regulation must be the touchstone’ ” [citations] and the standards set forth [in the ordinance] must be “susceptible of objective measurement” [citations].’ (Pp. 690-691.) We concluded that the subdivision in question here contained ‘overly broad standards [which] are fraught with the hazard that an applicant will be denied his rights to free speech and press through exercise of the power of the board, in its discretion, to refuse a permit because of the content of the films which the applicant exhibits in his theater.’ (P. 692.)
“It is apparent that the rule announced in Burton applies only to those situations in which the operation of a licensing ordinance impinges upon the exercise of First Amendment activities, rather than ordinary commercial enterprises. (Saunders v. City of Los Angeles, 273 Cal.App.2d 407, 411 [78 Cal.Rptr. 236].) Thus, in Daniel v. Board of Police Commissioners, 190 Cal.App.2d 566, 573 [12 Cal.Rptr. 226], the court upheld section 103.29 against a claim of vagueness and lack of standards in the context of the denial of a license for premises upon which food and beverages were sold and live entertainment provided. In Burton v. Municipal Court, supra, 68 Cal.2d 684, 693, we noted that the holding in Daniel was ‘not necessarily in conflict with the views we express’ since the Daniel opinion ‘does not discuss the question of licensing activities within the ambit of the First Amendment . . . .’ Nevertheless, presumably because the Daniel case *Supp. 15 did involve the licensing of ‘live entertainment’ possibly protected by the First Amendment (see In re Giannini, 69 Cal.2d 563, 568-570 [72 Cal.Rptr. 655, 446 P.2d 535]), we disapproved Daniel, but only ‘insofar as its language may be deemed inconsistent with the results . . . announced’ in Burton. (68 Cal.2d at p. 693.)
“Therefore, we conclude that insofar as Daniel involved activities not falling within the ambit of the First Amendment, that case correctly held that the language of section 103.29furnishes adequate standards to guide the Board in licensing matters and is not unconstitutionally vague. (See also Saunders v. City of Los Angeles, supra, 273 Cal.App.2d 407, 411-412; Carolina Lanes, Inc. v. City of Los Angeles, 253 Cal.App.2d 831, 835-836 [61 Cal.Rptr. 630]; Sultan Turkish Bath v. Board of Police Comrs., 169 Cal.App.2d 188, 199-201 [337 P.2d 203].)” (Italics added.)
It would appear that the People are bootstrapping here. They ask us to assume that nothing goes on in any of the social clubs which might be protected by the First Amendment and then use that assumption to maintain their assertion that section 103.29 provides adequate guidelines for the restriction of these activities. Unlike a roller rink, a “social club” may be a multitude of things. Nothing in the ordinance restricts the use of the term to any meaningful degree. The city attorney’s argument that “we know” what goes on there, just is not supported by the language of the ordinance.
Respondents correctly point out that when considering a claim of overbreadth, a reviewing court may take into account the operation of the provisions in factual situations other than the one at bar. (In re Berry (1968) 68 Cal.2d 137, 152 [65 Cal.Rptr. 273, 436 P.2d 273]; N.A.A.C.P. v. Button (1963) 371 U.S. 415, 432 [9 L.Ed.2d 405, 417-418, 83 S.Ct. 328].) In People v. Fogelson (1978) 21 Cal.3d 158 [145 Cal.Rptr. 542, 577 P.2d 677], the court recently emphasized that an individual charged with violating a law or regulation may attack its constitutionality on the basis that it substantially encroaches upon First Amendment protected activity whether or not the defendant’s own conduct is shown to be constitutionally privileged. The court explicated at length that the vice of an overbroad ordinance affecting First Amendment rights is not only its effect in a particular case but also the “chilling effect” it has on the exercise by others of constitutional rights. We need not repeat that reasoning here. (At pp. 163-164.)
*Supp. 16 In Sunset Amusement Co. v. Board of Police Commissioners, supra, the following also was said: “Petitioners also claim that ‘the joint participation involved in skating (and watching skaters) at a roller skating rink is an assemblage entitled to protection under the First Amendment guarantee of freedom of association and assembly . . . .’ There is no question that petitioners’ patrons are assembled together in one building or rink, and in that sense constitute an ‘assemblage.’ But again, no case has ever suggested that the constitutional freedom of assembly or association extends to a congregation of persons engaged in mere physical activity or self-amusement. ‘It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inescapable aspect of the “liberty” assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech. [Citations.]’ (Italics added; N.A.A.C.P. v. Alabama, 357 U.S. 449, 460 [2 L.Ed.2d 1488, 1498, 78 S.Ct. 1163].) In the words of our state Constitution, ‘The people shall have the right to freely assemble together to consult for the common good, to instruct their representatives, and to petition the Legislature for redress of grievances.’ (Italics added; art. I, § 10.)” (7 Cal.3d at pp. 74-75.)
The court concluded that no significant First Amendment activities were involved in the operation of the rollerskating rink.
With respect to the ordinance here involved, the People contend that “the main purpose of social clubs, as defined by section 103.103.1, is to provide recreation and amusement and not communication or advancement of ideas and beliefs.” This contention, although repeated several times by the People in varying language, simply cannot be upheld in light of the broad definition given to “social club” by the ordinance itself and the principles of law set forth in People v. Fogelson, supra, 21 Cal.3d 158.
The orders appealed from are affirmed.
Pacht, J., and Bigelow, J., concurred.