[Crim. No. 42420. Second Dist., Div. Three. Sept. 27, 1982.]

THE PEOPLE, Plaintiff and Appellant, v.
DOROTHY CAROL KATRINAK, Defendant and Respondent.

THE PEOPLE, Plaintiff and Appellant, v.
SHARON LYNN LEE, Defendant and Respondent.

COUNSEL

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Dirk L. Hudson, Deputy District Attorneys, for Plaintiff and Appellant.

Hecht, Diamond & Greenfield and Roger Jon Diamond for Defendants and Respondents.

---

OPINION

**KLEIN, P. J.**—The People appeal adverse rulings relating to the constitutionality of certain provisions of Los Angeles County Ordinance No. 5860 (Ordinance).

The provisions of the Ordinance at issue here relate to licensing of escort bureaus. Section 533[1] mandates that "[e]very person conducting, managing or carrying on any escort bureau shall first procure a license and pay an annual license fee . . . ."

Section 532 defines "escort bureau" as meaning "any business or agency which for a fee, commission, hire, reward or profit, furnishes or offers to furnish escorts."

Section 531, subdivisions (a) and (b), defines an "escort" as: "(a) Any person who, for hire or reward accompanies others to or about social affairs, entertainment or places of amusement. [¶] (b) Any person who, for hire or reward consorts with others about any place of public resort or within any private quarters."

The central issue in this case is whether the operation of an escort bureau is protected under the First Amendment to the United States Constitution or pursuant to the California Constitution as a proper exercise of the freedom of association, an integral aspect of freedom of speech.

We conclude that such activity is not constitutionally protected and that the Ordinance does not offend either the free speech or due process guarantees of the United States and California Constitutions. We also determine that the Ordinance is a valid exercise of the police power, and so reverse the rulings below.

---

[1]All future references to sections of the Los Angeles County Ordinance No. 5860 shall be by section number only.

## PROCEDURAL AND FACTUAL BACKGROUND

In September 1980, the People filed misdemeanor complaints against Dorothy Carol Katrinak (Katrinak) and Sharon Lynn Lee (Lee). Katrinak was charged with violating section 533 by engaging in the business of an escort bureau without first obtaining a license.[2] Lee was charged with violating Business and Professions Code section 16240 by failing to comply with section 533 of the Ordinance.[3] Katrinak and Lee filed motions to dismiss and demurrers to their respective complaints on the grounds that section 533 and the related licensing sections were unconstitutional on their face. The trial court dismissed the cases after ruling the Ordinance was unconstitutionally broad and vague and that the court was therefore without jurisdiction to proceed.[4] The People appealed to the appellate department of the superior court.[5]

The superior court ordered the two cases consolidated on appeal, and affirmed the trial court in an unpublished opinion. The court held that "... the associational purposes of an escort bureau more closely parallel those [allegedly protected activities] of a social club ...," and cited its opinion in *People* v. *Stephenson* (1978) 83 Cal.App.3d Supp. 8 [148 Cal.Rptr. 575].[6] The People's motion to transfer the appeal to this

---

[2]Section 7, subdivision (a) of the Ordinance makes failure to obtain a license a misdemeanor.

[3]Business and Professions Code section 16240 provides: "Every person who commences or carries on any business, trade, profession, or calling, for the transaction or carrying on of which a license is required by any law of this State, without taking out or procuring the license prescribed by such law, is guilty of a misdemeanor."

A city or county ordinance is a "law of this state" within the meaning of this provision. (*In re Groves* (1960) 54 Cal.2d 154, 159 [4 Cal.Rptr. 844, 351 P.2d 1028]; *Ex Parte Bagshaw* (1908) 152 Cal. 701, 703 [93 P. 864].)

[4]If a criminal statute is unconstitutional, the court lacks subject matter jurisdiction and cannot proceed to try the case. (*Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238, 245 [158 Cal.Rptr. 330, 599 P.2d 636]; Witkin, 1 Cal. Procedure (2d ed. 1970) Jurisdiction, § 60, p. 582.)

[5]The notices of appeal state that the People appeal under Penal Code section 1466, subdivision (1)(b), "[f]rom a judgment for the defendant upon the sustaining of a demurrer." The docket sheet and the settled statement on appeal, however, mention no action on the demurrers but merely indicate that the court ordered the two cases dismissed. On this record we assume that the court did not sustain the demurrers but instead terminated the actions by granting the motions to dismiss. The People's appeal therefore should have been pursuant to Penal Code section 1466, subdivision (1)(a), "[f]rom an order or judgment dismissing or otherwise terminating the action before the defendant has been placed in jeopardy ...." This inadvertence does not affect the issues on appeal because the grounds for both the demurrer and the motion to dismiss were identical.

[6]In *Stephenson*, the superior court struck down a city ordinance requiring "social clubs" to be licensed. The court held that the ordinance was overbroad because

court was granted, pursuant to California Rules of Court, rule 63(a), (b) and (c).

## CONTENTIONS

On appeal, the People contend that the Ordinance is constitutional and a valid application of the county's police power.

Katrinak and Lee assert that: (1) The operation of an escort bureau is a protected activity under the First Amendment and we must therefore use a strict scrutiny standard of review; (2) the Ordinance is unconstitutionally vague and violates fundamental due process guarantees in several respects.

## DISCUSSION

Under the California Constitution, a county has broad authority to "make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7, *Sunset Amusement Co.* v. *Board of Police Commissioners* (1972) 7 Cal.3d 64, 72 [101 Cal.Rptr. 768, 496 P.2d 840].) Such ordinances and regulations will ordinarily be upheld unless they violate state or federal due process standards. "In the exercise of its police power [the legislative body] does not violate due process so long as an enactment is procedurally fair and reasonably related to a proper legislative goal. The wisdom of the legislation is not at issue in analyzing its constitutionality, and neither the availability of less drastic remedial alternatives nor the legislative failure to solve all related ills at once will invalidate a statute. [Citations.]" (*Hale* v. *Morgan* (1978) 22 Cal.3d 388, 398 [149 Cal.Rptr. 375, 584 P.2d 512]; see also *Perez* v. *City of San Bruno* (1980) 27 Cal.3d 875, 889 [168 Cal.Rptr. 114, 616 P.2d 1287].)

Katrinak and Lee, however, assert that an escort bureau involves the First Amendment right of association as that right relates to free speech, which would require us to review the Ordinance under a strict scrutiny standard. (*People* v. *Glaze* (1980) 27 Cal.3d 841, 845 [166 Cal.Rptr. 859, 614 P.2d 291]; *Sunset Amusement Co.* v. *Board of Po-*

---

"[n]othing in the ordinance restricts ... the term ['social club'] to any meaningful degree." (*Id.*, at p. 15.)

*lice Commissioners, supra*, 7 Cal.3d at p. 72.) We therefore review the First Amendment claims before reaching the due process issues.

■ 1. *Since the Ordinance does not involve restrictions on protected First Amendment activities, we need not employ a "higher standard" of review.*

Freedom of speech enjoys a "preferred position" under the law, and the courts will exercise a zealous solicitude for rights shielded by the amendment. If the Ordinance in fact involves restrictions on protected First Amendment activities, we agree we must employ a higher standard of review. (*Ibid.*) This higher standard requires the government to show "that the regulation is narrowly and explicitly drawn and necessary to further a legitimate government interest." (*People* v. *Glaze, supra*, 27 Cal.3d at p. 846; see also *Burton* v. *Mun. Court* (1968) 68 Cal.2d 684, 692 [68 Cal.Rptr. 721, 441 P.2d 281].)

The First Amendment embraces freedom of association as an essential aspect of freedom of speech. The United States Supreme Court has emphasized that "abstract discussion is not the only species of communication which the Constitution protects; the First Amendment also protects vigorous advocacy, certainly of lawful ends, against governmental intrusion." (*N. A. A. C. P.* v. *Button* (1963) 371 U.S. 415, 429 [9 L.Ed.2d 405, 416, 83 S.Ct. 328].) In order to shelter this vigorous advocacy, certain forms of group activity come within the privilege. Thus, the First and Fourteenth Amendments protect the rights of laymen to "associate together to help one another to preserve and enforce rights granted them under federal laws...." (*Railroad Trainmen* v. *Virginia Bar* (1964) 377 U.S. 1, 7 [12 L.Ed.2d 89, 94, 84 S.Ct. 1113].) Association for political purposes is also firmly within the scope of the amendment's protection: "There can no longer be any doubt that freedom to associate with others for the common advancement of political beliefs and ideas is ... protected by the First and Fourteenth Amendments." (*Kusper* v. *Pontikes* (1973) 414 U.S. 51, 56-57 [38 L.Ed.2d 260, 266, 94 S.Ct. 303]; see also *Democratic Party of U. S.* v. *Wisconsin* (1981) 450 U.S. 107, 121 [67 L.Ed.2d 82, 94, 101 S.Ct. 1010].)

The Supreme Court has thus recognized freedom of association as necessary to promote the First Amendment's goal of preserving "an uninhibited market place of ideas in which truth will ultimately prevail." (*Red Lion Broadcasting Co.* v. *FCC* (1969) 395 U.S. 367, 390 [23

L.Ed.2d 371, 389, 89 S.Ct. 1794]; see also *Runyon* v. *McCrary* (1976) 427 U.S. 160, 175 [49 L.Ed.2d 415, 427, 96 S.Ct. 2586].)

With these principles in mind, we must determine whether operation of an escort bureau is a constitutionally protected activity.

The parties have not submitted and our research has not revealed any California cases or cases from other jurisdictions directly addressing this particular issue. However, we find persuasive our Supreme Court's analysis in *Sunset Amusement Co.* v. *Board of Police Commissioners, supra,* 7 Cal.3d at pages 74-75, in which petitioners argued that roller skating rink activities include "entertainment" or "amusement" of patrons and that the patron's rights of free speech and assembly would be affected by a licensing ordinance.

Answering the contention, the Supreme Court stated, "... no case has ever held or suggested that simple physical activity falls within the ambit of the First Amendment, at least in the absence of some element of communicating or advancing ideas or beliefs.... The key element is, of course, *communication.* We have difficulty finding that essential element to exist in the context of a roller skating rink."

The court goes on to observe that "[t]here is no question that petitioners' patrons are assembled together in one building or rink, and in that sense constitute an 'assemblage.' But again, no case has ever suggested that the constitutional freedom of assembly or association extends to a congregation of persons engaged in mere physical activity or self-amusement. 'It is beyond debate that freedom to engage in association *for the advancement of beliefs and ideas* is an inseparable aspect of the "liberty" assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech. [Citations.]' ..."

The activities described in the Ordinance at issue are essentially entertainment-oriented, commercial relationships. Escort bureaus, like roller rinks, do not foster assemblages for the advancement of beliefs and ideas. Rather, they provide a commercial service for those who wish to hire a companion. The activity in question is closer to the "self-amusement" of patrons at a roller rink than the group activity traditionally shielded by the Constitution.

As to Katrinak and Lee's novel contention that "the right to associate for the sake of association is a fundamental right," citing *City of Santa*

*Barbara* v. *Adamson* (1980) 27 Cal.3d 123 [164 Cal.Rptr. 539, 610 P.2d 436] for support, we do not understand that case as supporting such a broad proposition.

In *Adamson,* our Supreme Court struck down a municipal ordinance prohibiting six or more unrelated persons from living together in areas zoned for family residences. Basing its decision on the California constitutional right of privacy,[7] the court quoted from the ballot argument drafted by the proponents of the provision which added the right of privacy to the Constitution: "'The right of privacy is the right to be left alone. *It is a fundamental and compelling interest.* It protects our *homes,* our *families,* our thoughts, our emotions, our expressions, our personalities, our *freedom of communion* and our *freedom to associate with the people we choose . . . .*'" (*Id.,* at p. 130.)

Although the ballot argument in support of the privacy amendment to the California Constitution mentions "freedom to associate with the people we choose," the fundamental right contemplated is privacy, not association. Freedom to associate with people of one's choice is a necessary adjunct to privacy in the family and the home. However, Katrinak and Lee are urging a far broader interpretation than the right of privacy would support. While the privacy right clearly encompasses certain fundamental personal decisions concerning family life,[8] the Ordinance under attack does not touch upon the family but instead, regulates an essentially commercial relationship. Sale of companionship does not occupy the same position under our laws as the sort of personal intimacy protected under the concept of a right to privacy.

Freedom of speech which assuredly rests in some measure for its continued existence on the citizen's right to associate freely is to be zea-

---

[7]The California Constitution, article I, section 1 provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

[8]See, e.g., *Skinner* v. *Oklahoma* (1942) 316 U.S. 535, 541-542 [86 L.Ed. 1655, 1660, 62 S.Ct. 1110] (procreation); *Loving* v. *Virginia* (1967) 388 U.S. 1, 12 [18 L.Ed.2d 1010, 1018, 87 S.Ct. 1817] (marriage); *Eisenstadt* v. *Baird* (1972) 405 U.S. 438, 453-454 [31 L.Ed.2d 349, 362-363, 92 S.Ct. 1029] (contraception); *Pierce* v. *Society of Sisters* (1925) 268 U.S. 510, 534-535 [69 L.Ed. 1070, 1077-1078, 45 S.Ct. 571, 39 A.L.R. 468] (child raising and education); *City of Santa Barbara* v. *Adamson, supra,* 27 Cal.3d at pp. 129-130; *Atkisson* v. *Kern County Housing Authority* (1976) 59 Cal.App.3d 89, 98 [130 Cal.Rptr. 375] (unmarried persons living together); Karst, *The Freedom of Intimate Association* (1980) 89 Yale L.J. 624.

lously guarded. However, it is clear from the cases cited that language such as "shelter this vigorous advocacy," "an uninhibited market place of ideas in which truth will ultimately prevail," "associate together . . . to preserve and enforce rights granted . . .," "to petition . . . for redress of grievances" indicates that we are dealing with protections insuring our precious right of freedom from untoward government intrusion and oppression.

It would make a mockery of these cherished constitutional principles to suggest that the activities embraced by an escort bureau rise to a similar level. Therefore we are agreed that the operation of an escort bureau does not involve constitutionally protected activity which would require us to examine regulatory legislation under the strict scrutiny standard.

We next examine the licensing provisions of the Ordinance in the light of constitutional due process guarantees.

■ *2. The Ordinance withstands due process scrutiny.*

An ordinance enacted under the police power does not violate due process if it is "procedurally fair and reasonably related to a proper legislative goal." (*Hale* v. *Morgan* (1978) 22 Cal.3d 388, 398 [149 Cal. Rptr. 375, 584 P.2d 512].) Katrinak and Lee attack the Ordinance as violating constitutional due process on several grounds.

They initially contend that the escort bureau provisions bear no reasonable relationship to a proper legislative goal. (*Ibid.*) However, "[t]he requirement that a license first be obtained before conducting a business or activity has long been recognized as a valid exercise of the police power." (*Sunset Amusement Co.* v. *Board of Police Commissioners, supra*, 7 Cal.3d at p. 72.)

Licensing of local business promotes the public welfare, a traditional goal of the police power, by imposing certain requirements of accountability upon those who sell products or services to the public. Los Angeles County reasonably could conclude that its citizens would benefit from licensing of escort bureaus as local commercial enterprises.[9]

---

[9]Katrinak and Lee claim that "[i]nsofar as the escort bureau [ordinance] appears to relate to the regulation of sexual conduct, it also runs afoul of the state preemption doctrine as enunciated in *Lancaster* v. *Municipal Court*, 6 Cal.3d 805 (1972)." In *Lan-*

Katrinak and Lee also urge that the Ordinance is invalid because it lacks any provision indicating that the business license commission must grant a license at all. The Ordinance, however, carefully specifies grounds for denial in section 83.[10] Section 47 requires the issuance of a license subject to conditions where the conditions imposed will obviate the grounds for denying the license. The relevant language in section 47 provides: "If the applicant does not request a hearing and a hearing is not required by this ordinance, *the license shall be issued* subject to the conditions recommended pursuant to Section 45.2.[11] If a hearing is held and the Commission finds that the facts are such that one or more or [*sic*] the provisions of Article 7 of this chapter relating to the denial of a license would apply if the license is issued without conditions, but that conditions can be imposed which will eliminate any ground for denial provided for in said Article 7, *the Commission shall instruct the tax collector to issue, and the tax collector shall issue*, the license subject to such conditions." (Italics added.)

---

*caster*, our Supreme Court struck down a municipal ordinance which made it a misdemeanor for a person to massage a person of the opposite sex as a commercial business. The court held that the ordinance was invalid "because the state has preempted the criminal aspects of sexual activity." (*Id.*, at p. 810.)

The Ordinance at issue here, however, is not a criminal statute but a licensing scheme for a lawful business enterprise. The court in *Lancaster* recognized this difference and distinguished a prior appellate court case, *Robins* v. *County of Los Angeles* (1966) 248 Cal.App.2d 1 [56 Cal.Rptr. 853], which had upheld a county ordinance requiring licensing of establishments employing topless waitresses: "The fact that the criminal aspects of sexual activity have been preempted by the state does not mean that counties may not collect license fees for the right to engage in lawful activities relating to sex." (*Lancaster* v. *Municipal Court, supra*, 6 Cal.3d at p. 809; see also *EWAP, Inc.* v. *City of Los Angeles* (1979) 97 Cal.App.3d 179, 190-191 [158 Cal.Rptr. 579].)

[10]Section 83 provides: "The following shall constitute grounds for denial of a license other than a license covered by Section 82.7 ['activities which may involve free speech'] ...: [¶] (a) The business is prohibited by any local ... regulation, or prohibited in the particular location by any law, statute, or rule; or [¶] (b) The business has been or is a public nuisance; or [¶] (c) The applicant is unfit to be trusted with the privileges granted by such license, or has a bad moral character, intemperate habits or a bad reputation for truth, honesty, or integrity; or [¶] (d) The applicant, his agent or employee, or any person connected or associated with the applicant as partner, director, officer, stockholder, associate, or manager has committed or aided or abetted in the commission of any act or act of omission which, committed by a licensee would be a ground for disciplinary action under this article; or [¶] (e) The applicant, his agent or employee, or any person connected or associated with the applicant as partner, director, officer, stockholder, associate or manager has been refused a license or had a license revoked by the County, or by any other public agency as defined in Section 28.2 on any ground on which the County could deny such a license ..., or [¶] (f) The establishment or business will in any way be detrimental to the public interest."

[11]Section 45.2 provides in pertinent part: "If any office or department finds that the facts are such that any one or more of the provisions of Article 7 of this chapter relat-

Absence of a parallel provision mandating issuance of a license without conditions does not invalidate this Ordinance on its face. Under sections 83 and 47, the business license commission must, a fortiori, issue a license unless it finds grounds for denial which cannot be cured by imposing limiting conditions.

Katrinak and Lee further contend that two sections of the Ordinance contain unconstitutionally vague language. ■ A statute or ordinance violates fundamental due process if it requires or prohibits the doing of an act with such vagueness that a person of common intelligence must guess at its meaning. It must be sufficiently definite to provide a standard of conduct, or notice, and a standard for ascertaining guilt. (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 491 [134 Cal.Rptr. 630, 556 P.2d 1081]; *People* v. *Barksdale* (1972) 8 Cal.3d 320, 327 [105 Cal.Rptr. 1, 503 P.2d 257].) However, a statute is presumed valid and courts will uphold it "if its terms may be made reasonably certain by reference to other definable sources." (*People* v. *Superior Court* (*Hartway*) (1977) 19 Cal.3d 338, 345 [138 Cal.Rptr. 66, 562 P.2d 1315].)

■ Katrinak and Lee attack the term "consorts" in section 531, subdivision (b) as unconstitutionally vague. Webster's Third New International Dictionary (1981) defines "to consort" as an intransitive verb meaning "to keep company." The definition of "consort" used as a noun is "one that shares the company of or is associated with another," or "companion." (*Id.*, at p. 485.) Subdivision (b) may be reasonably construed to specify any person who keeps company with others, for reward or hire, in public or in private quarters. As construed, this provision is not constitutionally infirm.

Under the same theory Katrinak and Lee also question the constitutionality of section 536, which provides for a sheriff's report and hearing on license applications as follows: "The Sheriff, *after investigation, shall report to the Commission* as to whether the applicant for a license to conduct an escort bureau is of good moral character and reputation,

---

ing to the denial of a license would apply if the license is issued without conditions or that the licensee could conduct the occupation or activity so as to be detrimental to public health, or safety, or public welfare if the license is issued without conditions, but that conditions can be imposed which will eliminate any ground for denial provided for in said Article 7, or, as the case may be, will prevent the conduct of the occupation or activity so as to be detrimental to public health, or safety, or public welfare, such offices or department shall recommend that such license be issued subject to such conditions."

the business is to be conducted at a suitable place, is calculated or intended to be operated as a subterfuge for the conduct of an unlawful or immoral business and practice. Except as otherwise provided in Section 63[12] *the Commission* or referee *shall hold a public hearing,* notice of the time and place of which shall be given to the applicant as provided in Section 101." (Italics added.) They contend that the phrases "good moral character and reputation," and "immoral business" are unconstitutionally vague and that the provision lacks adequate guidelines.

This section, however, merely instructs the sheriff regarding the content of a preliminary report to the business license commission or referee to be considered at the time of the hearing along with other information.

Section 83 of the Ordinance, which Katrinak and Lee do not challenge, sets forth grounds for denying a license for activities not involving free speech.[13] We note that our Supreme Court in *Sunset Amusement Co.* v. *Board of Police Commissioners, supra,* 7 Cal.3d at pages 71, 73, approved of a city ordinance with language substantially similar to that in section 83. (See also *Daniel* v. *Board of Police Commrs.* (1961) 190 Cal.App.2d 566, 574 [12 Cal.Rptr. 226].)

Constitutional due process also reaches legislative enactments which are so broad that they prohibit constitutionally protected conduct. (*Bowland* v. *Municipal Court, supra,* 18 Cal.3d at p. 493; *Findley* v. *Justice Court* (1976) 62 Cal.App.3d 566, 571 [133 Cal.Rptr. 241].) The Ordinance at issue does not appear on its face to affect any conduct other than operation of an escort bureau, which is not a protected activity. Having determined that the definitional language of the enactment is not unconstitutionally vague, we therefore conclude that it is also not overbroad.

3. *Other contentions do not address a controversy pending before this court.*

■ Katrinak and Lee raise a host of contentions regarding provisions of the Ordinance regulating licensed escort bureaus and their employees. Their position as *unlicensed* individuals, however, precludes

---

[12]Section 63 provides for automatic licensing renewal with certain exceptions which require a public hearing.

[13]See footnote 9, *supra.*

them from pursuing these issues. "The rule is well established ... that one will not be heard to attack a statute on grounds that are not shown to be applicable to himself and that a court will not consider every conceivable situation which might arise under the language of the statute and will not consider the question of constitutionality with reference to hypothetical situations. [Citations.] Petitioner has not shown that the statute is being invoked against him in the aspects or under the circumstances which he suggests, and hence may not be heard to complain." (*In re Cregler* (1961) 56 Cal.2d 308, 313 [14 Cal.Rptr. 289, 363 P.2d 305]; *People v. Bratis* (1977) 73 Cal.App.3d 751, 758 [141 Cal.Rptr. 45].)

They likewise attack several of the licensing provisions which on their face do not apply to the case at bench. The complaints as filed name Katrinak and Lee as *individuals* who have failed to comply with section 533. They may not challenge the sections concerned with fictitious names (§ 538) and applicants other than individuals (§ 537) without some proof that these provisions actually apply to them. (*Id.*)[14]

### Conclusion

We conclude that the operation of an escort bureau is not a protected activity under the United States or California Constitutions. The Los Angeles County Ordinance requiring escort bureaus to be licensed is a valid exercise of the county's police power, and as herein discussed, is not unconstitutional.

### Disposition

The judgment (order of dismissal) is reversed.

Potter, J., and Lui, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied November 24, 1982. Newman, J., did not participate therein.

---

[14]Katrinak and Lee's challenge to section 536, as failing to specify a time limit for the sheriff's preliminary investigation is similarly unripe for adjudication. They nowhere allege that they have applied for a license and suffered an unreasonable delay. They are therefore not parties aggrieved by the operation of the ordinance. (*People v. Rainville* (1974) 39 Cal.App.3d 982, 989 [114 Cal.Rptr. 902].)