Filed 10/12/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| WISEMAN PARK, LLC, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> SOUTHERN GLAZER'S WINE AND SPIRITS, LLC, <br><br> Defendant and Respondent. | B266118 <br><br> (Los Angeles County <br> Super. Ct. No. BC548599) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Kenneth R. Freeman, Judge. Reversed and remanded.

Matthew E. Hess; Green & Noblin, James Robert Noblin for Plaintiff and Appellant.

Korshak, Kracoff, Kong & Sugano, Keith R. Thorell, Clement Jon Kong for Defendant and Respondent.

_____

Wiseman Park, LLC (appellant) appeals from the judgment entered following the trial court sustaining the demurrer of Southern Glazer's Wine and Spirits, LLC (respondent)[1] to appellant's complaint without leave to amend. Appellant, the holder of a license to sell alcoholic beverages in its restaurant, purchased alcoholic beverages from respondent, a licensed wholesale distributor of alcoholic beverages. In this action, appellant seeks to recover "carrying charges" it paid respondent on the theory that those charges were not permitted by the Alcoholic Beverage Control Act (ABC Act).[2] The trial court ruled that the California Department of Alcoholic Beverage Control (Department) has exclusive jurisdiction over appellant's claims because appellant's allegations "directly implicate the sale of alcohol."

The Department does have exclusive jurisdiction to issue, deny, suspend and revoke alcoholic beverage licenses according to terms of the ABC Act and regulations adopted pursuant to it. We hold, however, that the consequences of committing a violation of the ABC Act by imposing charges of the type collected by respondent from appellant in this case are not limited to those which the Department may impose on its licensees and do not bar the contract, unfair competition and declaratory relief claims alleged in appellant's complaint. Accordingly, we reverse the trial court's order sustaining respondent's demurrer and remand this matter for further proceedings.

---

[1] During the trial court proceedings, respondent was known as Southern Wine and Spirits of America, Inc. Following a corporate transaction, that entity was renamed Southern Glazer's Wine and Spirits, LLC.

[2] The ABC Act is set out in division 9 of the Business and Professions Code, commencing at section 23000. Further undesignated statutory references are to that code.

# BACKGROUND[3]

Appellant is a dissolved California limited liability company which operated a restaurant in Los Angeles, California, from approximately November 2003 through December 2010.[4] During that time, appellant held an "eating place" alcoholic beverage license issued by the Department. This license permitted appellant to purchase alcoholic beverages at wholesale and resell them at retail to patrons of its restaurant.

Respondent is a Florida corporation, authorized to transact business in California, which holds importer and/or wholesale distributor alcoholic beverage licenses issued by the Department.

In November 2003, appellant entered a credit agreement with respondent to facilitate the purchase of alcoholic beverages. Paragraph 2 of the standardized form used by respondent, which appellant signed, stated, "All sales are made in accordance with state law, including provisions of the Alcoholic Beverage Law mandating a one-percent (1%) penalty on all past-due invoices from the forty-third (43rd) day from the date of delivery and each thirty (30) days thereafter." Paragraph 3 of the credit agreement stated, "In addition to the state-mandated penalty charge, a one percent (1%) carrying charge will be charged on all past-due invoices from the forty-third (43rd) day from the date of delivery and each thirty (30) days thereafter."

---

[3] The facts are taken from those alleged in appellant's complaint as, in reviewing on appeal a judgment sustaining a demurrer without leave to amend, the material facts of the complaint are taken as true. (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591.)

[4] "A limited liability company that has filed a certificate of cancellation nevertheless continues to exist for the purpose of winding up its affairs, [including] prosecuting . . . actions . . . in order to collect . . . its assets." (Corp. Code, § 17707.6, subd. (a).)

3

The terms of paragraph 2 of the credit agreement are virtually identical to text within section 25509, with the exception that the statute does not use the word "penalty." Section 25509 provides in pertinent part that a wholesaler who sells alcoholic beverages to a retailer and who does not receive payment "by the expiration of the 42nd day from the date of delivery shall charge the retailer 1 percent of the unpaid balance for [the alcoholic beverages] on the 43rd day from the date of delivery and an additional 1 percent for each 30 days thereafter." There is no mention of a carrying charge in section 25509.

After entering the credit agreement with respondent, appellant purchased alcoholic beverages on credit from respondent from time to time. When respondent delivered alcoholic beverages to appellant, respondent presented appellant with its standard invoice. The invoice included the following terms of payment: "This invoice is payable in thirty (30) days. A one percent (1%) carrying charge will be added to the current statutory charges of one percent (1%) (CA B&P Code 25509) on all balances unpaid after forty-two (42) days and each thirty (30) days thereafter."

On occasion, appellant paid invoices more than 42 days after their due dates. Respondent then charged appellant both the 1 percent "penalty" and the 1 percent "carrying charge." Appellant paid both charges.

In June 2014, appellant filed this lawsuit seeking recovery of the "carrying charges" it had paid to respondent; also seeking similar recovery on behalf of all others similarly situated. Appellant's complaint alleges that section 25509 limits wholesalers to collecting the 1 percent statutory charge on accounts not paid in full by the 42nd day (and collecting a similar charge each 30 days thereafter) and that respondent's "carrying charges" are not permitted by section 25509. Appellant alleges five causes of action:

4

declaratory relief, breach of contract, money had and received, open book account and violation of section 17200.

The trial court sustained without leave to amend respondent's demurrer to the complaint, accepting respondent's contention that the Department has exclusive jurisdiction over all matters relating to the sale of alcohol.

## CONTENTION

Appellant contends the Department's exclusive jurisdiction does not extend to encompass this contract dispute between businesses; and, in any event, California's unfair competition statute affords appellant a remedy.[5]

## DISCUSSION[6]

In sustaining respondent's demurrer to appellant's complaint without leave to amend, the trial court ruled: ". . . because the allegations of the Complaint directly implicate the sale of alcohol, and since the Department has exclusive jurisdiction in this area, the Complaint cannot go forward in this court. See B&P Code § 23090.5 (noting that '[n]o Court of this state, *except the Supreme Court, and the courts of appeal* to the extent specified in this article, shall have jurisdiction to review, affirm, reverse, correct, or annul any order, rule or decision of the department or suspend, stay or delay the operation or execution thereof, or restrain, enjoin, or interfere with the

---

[5] We do not consider appellant's arguments on appeal concerning any impact of the trial court's ruling on the class action allegations of appellant's complaint because these issues were neither presented to, nor addressed by, the trial court in its ruling. Nor do we resolve the parties' disparate readings of section 25509 as they were not addressed by the trial court. (See *post*, section IV.)

[6] Respondent's demurrer is not part of the record on appeal. We rely on the trial court's description of that document.

department in the performance of its duties . . . .') (Emphasis added.)" The trial court concluded, "Plaintiff's remedy, if any, would be before the ABC, with the right to seek redress before the Court of Appeal and California Supreme Court under § 23090.5."

I.    **Standards of Review**

On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *Buckaloo v. Johnson* (1975) 14 Cal.3d 815, 828.) The appellate court does not, however, assume the truth of contentions, deductions or conclusions of law. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.) The judgment must be affirmed "if any one of the several grounds of demurrer is well taken. [Citations.]" (*Longshore v. County of Ventura* (1979) 25 Cal.3d 14, 21.) However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103.) And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. (*Blank v. Kirwan, supra,* 39 Cal.3d at p. 318; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967.)

Review of the trial court's judgment in this case will require us to construe provisions of both our state Constitution and state statutes. The applicable principles of construction are similar. Whether construing a constitutional or statutory provision, our paramount task is to ascertain the intent of those who enacted it. (*Davis v. City of Berkeley* (1990) 51 Cal.3d

6

227, 234; *Thompson v. Department of Corrections* (2001) 25 Cal.4th 117, 122; *Bighorn-Desert View Water Agency v. Verjil* (2006) 39 Cal.4th 205, 212; *Richmond v. Shasta Community Services Dist.* (2004) 32 Cal.4th 409, 418.) To determine the voters' intent, courts look first to the constitutional text, giving words their ordinary meanings. (*Bighorn-Desert View Water Agency,* at p. 212; *Richmond,* at p. 418.) And, when a provision of the Constitution is ambiguous, a court ordinarily must adopt the interpretation which carries out the intent and objective of the drafters of the provision and of the people by whose vote it was enacted. (*Mosk v. Superior Court* (1979) 25 Cal.3d 474, 495, superseded on other grounds in *Adams v. Commission on Judicial Performance* (1994) 8 Cal.4th 630, 650.) New provisions of the Constitution must be considered with reference to the situation intended to be remedied or provided for. (*The Recorder v. Commission on Judicial Performance* (1999) 72 Cal.App.4th 258, 269; *In re Quinn* (1973) 35 Cal.App.3d 473, 483.) [7]

The same principles guide our review of enactments of our Legislature. "'In construing a statute, our role is to ascertain the Legislature's intent so as to effectuate the purpose of the law. [Citation.] In determining intent, we must look first to the words of the statute because they are the most reliable indicator of legislative intent. [Citation.] If the statutory language is clear and unambiguous, the plain meaning of the statute governs. [Citation.]' (*People v. Lopez* (2003) 31 Cal.4th 1051, 1056.) In other words, if there is 'no ambiguity or uncertainty in the language, the Legislature is presumed to have meant what it said,' and it is not necessary to 'resort to legislative history to determine the statute's true meaning.' (*People v. Cochran* (2002) 28 Cal.4th 396, 400–401.)" (*People v. Licas* (2007) 41 Cal.4th 362, 367.) "We

_____

[7]     As is discussed, *post*, the constitutional provision we construe was originally adopted by initiative and the terms we construe were continued in its present text.

7

begin by examining the statute's words, giving them a plain and commonsense meaning." (*People v. Murphy* (2001) 25 Cal.4th 136, 142.)

"Finally, the court may consider the impact of an interpretation on public policy, for '[w]here uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation.' [Citation.]" (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663.)

## II. Application

The fundamental issue presented in this appeal is the reach of the Department's regulation of the alcoholic beverage industry in this state. Appellant contends that neither the state Constitution nor the ABC Act bars private actions for breach of contract even when the gravamen of the claim is bottomed on what appellant contends is the proper construction of a section of the ABC Act, here, section 25509.[8] Respondent argues, and the trial court ruled, that the Department has exclusive jurisdiction over all matters involving contracts for the sale of beverages subject to regulation of the Department. This ruling was in error.[9]

---

[8] Appellant's fifth cause of action for unfair competition is separately addressed, *post*, in section III of this opinion.

[9] In our analysis, we do not consider an August 13, 2014 letter from the General Counsel of the Department to the Executive Director of the Wine and Spirits Wholesalers of California, stating the Department's view of the proper interpretation of section 25509. Respondent sought judicial notice of that letter. In our view, the trial court correctly sustained appellant's objection to that request, pointing out that the letter "does not qualify as a regulation or legislative enactment," but is "merely a position letter by the Department on the interpretation of § 25509." The letter indicates it had been solicited by an industry trade group to assist one party to the present litigation. Such letters are akin to an agency interpretation of a statute prepared for litigation, which is entitled to little, if any, weight. (*Culligan Water Conditioning v. State Bd. of Equalization* (1976) 17 Cal.3d 86, 92; see also

8

*A.    Constitutional Bases for Jurisdiction of the Department*

Article XX, section 22 of the state Constitution presently provides, in pertinent part:

"The State of California, subject to the internal revenue laws of the United States, shall have the exclusive right and power to license and regulate the manufacture, sale, purchase, possession and transportation of alcoholic beverages within the State, and subject to the laws of the United States regulating commerce between foreign nations and among the states shall have the exclusive right and power to regulate the importation into and exportation from the State, of alcoholic beverages. . . .

"All alcoholic beverages may be bought, sold, served, consumed and otherwise disposed of in premises which shall be licensed as provided by the Legislature.  In providing for the licensing of premises, the Legislature may provide for the issuance of [specified licenses] . . . .

" . . . .

"The sale, furnishing, giving, or causing to be sold, furnished, or giving away of any alcoholic beverage to any person under the age of 21 years is hereby prohibited, and no person shall sell, furnish, give, or cause to be sold, furnished, or given away any alcoholic beverage to any person under the age of 21 years, and no person under the age of 21 years shall purchase any alcoholic beverage.

". . . .

"The Department of Alcoholic Beverage Control shall have the exclusive power, except as herein provided and in accordance with laws enacted by the Legislature, to license the manufacture, importation and sale

---

*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 8–9.)

9

of alcoholic beverages in this State, and to collect license fees or occupation taxes on account thereof. The department shall have the power, in its discretion, to deny, suspend or revoke any specific alcoholic beverages license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals, or that a person seeking or holding a license has violated any law prohibiting conduct involving moral turpitude. It shall be unlawful for any person other than a licensee of said department to manufacture, import or sell alcoholic beverages in this State.

"    . . . .

"Until the Legislature shall otherwise provide, the privilege of keeping, buying, selling, serving, and otherwise disposing of alcoholic beverages in . . . [specified premises and in] premises open to the general public shall be licensed and regulated under the applicable provisions of the Alcoholic Beverage Control Act, insofar as the same are not inconsistent with the provisions hereof, and excepting that the license fee to be charged . . . shall be the amounts prescribed as of the operative date hereof, subject to the power of the Legislature to change such fees.

"    . . . .

"The Legislature may . . . provide for the issuance of all types of licenses necessary to carry on the activities referred to in the first paragraph of this section, including, but not limited to, licenses necessary for the manufacture, production, processing, importation, exportation, transportation, wholesaling, distribution, and sale of any and all kinds of alcoholic beverages.

"    . . . .

10

"All constitutional provisions and laws inconsistent with the provisions hereof are hereby repealed.

"The provisions of this section shall be self-executing, but nothing herein shall prohibit the Legislature from enacting laws implementing and not inconsistent with such provisions."

This section has its origins in an initiative constitutional amendment, and statutes, enacted in anticipation of, and in the years immediately following, the repeal of Prohibition in 1933 by enactment of the Twenty-first Amendment to the United States Constitution.[10] In anticipation of regaining control over "intoxicating liquors," the state of California took two intertwined actions: In 1932, our voters adopted an amendment to the state Constitution, article XX, section 22, and, in 1933, the state Legislature enacted a series of statutes, to implement the newly restored authority. (Art. XX, § 22; Stats. 1933, ch. 658, §§ 1–39, pp. 1697–1707.)[11]

---

[10] The Eighteenth Amendment to the United States Constitution, effective January 17, 1920, had banned the "manufacture, sale, or transportation of intoxicating liquors." The Twenty-first Amendment, which became effective on December 5, 1933, upon its ratification by a state convention (that of the state of Utah), repealed the Eighteenth Amendment, restoring the power of the states to regulate the manufacture, transportation and sale of alcoholic beverages within their borders.

[11] The early history of the adoption of the original version of article XX, section 22 of the "Liquor Control Act" and of the regulation of alcoholic beverages in California was set out in *Sandelin v. Collins* (1934) 1 Cal.2d 147: "Prior to the enactment of the eighteenth amendment to the Constitution of the United States the right of regulation of traffic in alcoholic liquors was exercised by the state or under the authority of the state by local legislative bodies and by local option. These rights of regulation were superseded by the federal law and the enactment of the State Prohibition Enforcement Act, commonly known as the Wright Act. (Stats. 1921, p. 79.) The Wright Act was repealed by an initiative measure [designated on the ballot as proposition No. 1] approved at the general election held on

11

In 1934, article XX, section 22 was updated to recognize the repeal of the Eighteenth Amendment, to vest authority for administering the state's regained control over alcoholic beverages in the State Board of Equalization and to recognize the power of the Legislature to "otherwise provide" for "the privilege of keeping, buying, selling, serving, and otherwise disposing of intoxicating liquors [in specified places] . . . in so far as the same are not inconsistent with the provisions hereof. . . ." (Ballot Pamp., Gen. Elec. (Nov. 6, 1934), Intoxicating Liquors Initiative (Prop. 2), pp. 5–6.)

In 1954, article XX, section 22 was again revised, making two relevant material changes: (1) transferring the power to license and regulate alcoholic beverages from the State Board of Equalization to a newly created state agency, the Department of Alcoholic Beverage Control, and (2) adding the following as the penultimate paragraph of section 22: "The provisions of this

---

November 8, 1932. At the same election, also as an initiative measure (designated on the ballot as proposition No. 2), section 22 was added to article XX of the state Constitution. This section provided: 'In the event of the repeal of the State Prohibition Enforcement law commonly known as the Wright Act, and if and when it shall become lawful under the Constitution and laws of the United States to manufacture, sell, purchase, possess or transport intoxicating liquor for beverage purposes within the United States, the state of California, subject to the internal revenue laws of the United States, shall have the exclusive right and power to control, license and regulate the manufacture, sale, purchase, possession, transportation and disposition of intoxicating liquor within the state, and, subject to the laws of the United States . . . shall have the exclusive right and power to control and regulate the importation into and exportation from the state of intoxicating liquor; . . . ' (Stats. 1933, p. lxxx.)

"In 1933 the legislature enacted the present state Liquor Control Act to become operative upon the repeal of the eighteenth amendment . . . . (Stats. 1933, p. 1697.) . . . .

"The State Liquor Control Act of 1933 appears to be a complete and comprehensive plan for the license, regulation and control of the traffic in intoxicating liquors in conformity with the constitutional provision now in effect." (*Sandelin v. Collins, supra*, 1 Cal.2d at pp. 151–152.)

12

section shall be self-executing, but nothing herein shall prohibit the Legislature from enacting laws implementing and not inconsistent with such provisions." (Cal. Const., art. XX, § 22, as adopted Nov. 2, 1954; see Ballot Pamp., Gen. Elec. (Nov. 2, 1954), analysis of Prop. 3 by Legis. Counsel, p. 3; Sen. Const. Amend. No. 4, Stats. 1955 (1954–1955 1st Ex. Sess.) pp. cxiii–cxv.) This is the text of section 22 effective at present and during the time period at issue in this litigation.[12]

A fair reading of the text of article XX, section 22 as it is in effect at present (which as to relevant clauses is very similar to that originally enacted) is that the Department is charged in our Constitution with licensing and regulating the "manufacture, sale [etc.] . . . of alcoholic beverages . . ." to limit which businesses may engage in these functions, to control the distribution of such beverages, and to control who may—and may not—purchase them (e.g., by forbidding their purchase by minors (art. XX, § 22 & § 25658), but that the state has not also sought to specify the forum in which businesses which are licensees adjudicate their ordinary commercial (including contract) disputes. Such a fair reading recognizes the purpose of section 22 was and remains to permit and regulate what had been forbidden by the Eighteenth Amendment and to do so by requiring licensing of those participating in the newly legal industry. Alcoholic beverages were to be manufactured, distributed and sold only by those holding licenses. There is no provision in the 1932 initiative or in any of its subsequent iterations that

_____

[12] In 1956, Senate Constitutional Amendment No. 2 made minor changes in the language, as well as minor substantive changes, in article XX, section 22; however, those changes are not relevant to the issues in this appeal. (See Ballot Pamp., Gen. Elec. (Nov. 6, 1956), analysis of Prop. 5 by Legis. Counsel; Sen. Const. Amend. No. 2, Stats. 1957, pp. cxv–cxviii.)

either states or suggests a limitation on where or how commercial disputes between licensees were or are to be resolved. Nor has our review of the Ballot Pamphlet arguments for or against any of the iterations of article XX, section 22 revealed any such intent.[13]

Reference to two other provisions of our state Constitution validates our determination, as they bear on the allocation of jurisdiction to determine controversies and affect the fundamental rights of parties.

Article VI, section 1 of our Constitution vests the judicial power in the Supreme Court, Courts of Appeal and the superior courts. Sections 10 and 11 of article VI allocate jurisdiction among those courts.[14] Had there been any intention to divest the superior court of jurisdiction to hear contract disputes between entities subject to regulation by the Department, there would have been express provision for that constitutional change in the text of the

---

[13]    See Ballot Pamp., Gen. Elec. (Nov. 8, 1932) Proposed Amends. to Cal. Const. with arguments to voters, pp. 6–7; Ballot Pamp., Gen. Elec. (Nov. 6, 1934) Proposed Stats. and Amends. to Cal Const. with arguments to voters, pp. 6–7; Ballot Pamp., Gen. Elec. (Nov. 2, 1954) Proposed Stats. and Amends. to Cal. Const. with arguments to voters, pp. 3–4. Analyses and arguments contained in official ballot pamphlets circulated prior to the elections at which the amendments are voted on are appropriately used to resolve any ambiguities in the language of propositions adopted. (*Legislature v. Eu* (1991) 54 Cal.3d 492, 503; *Kennedy Wholesale, Inc. v. State Bd. of Equalization* (1991) 53 Cal.3d 245, 250.)

[14]    At the time of adoption of article XX, section 22 in 1932, and when it was amended in 1934, the judicial power was vested as set out in article VI, section 1 and allocated as set out in sections 4, 4b and 5 of article VI in relevant respects in a manner similar to the current provisions of the same article.

proposed amendment (if not in the 1932 version, then in one of the versions adopted since that year).[15]

Article I, section 17 of our state Constitution guarantees the right to trial by jury—a right manifestly not available in administrative proceedings.[16] Neither respondent nor the trial court cited any portion of any ballot proposition regarding article XX, section 22 which stated or suggested that in adopting section 22 there was also an express or implied repeal of this constitutional protection to litigants. Had there been any intention to remove this "basic and fundamental part of our system of jurisprudence" (*C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 8; *Byram v. Superior Court* (1977) 74 Cal.App.3d 648, 654), again, there would be specific reference to that intention both in the text of the section to be adopted and in the ballot materials submitted to the voters for their consideration of such an amendment.

Our independent review of the history of the adoption of article XX, section 22 in 1932, and of its amendments in the decades since, reveals no

---

[15]   Nor is there any indication in the official ballot title and summary, in the ballot label, in the arguments for and against the amendments, or in the Legislative Analysis for any of the amendments to this section of any intention to make an exception to the manner in which the judicial power is allocated with respect to contract disputes of licensees; nor to deprive them of the right to jury trial, as we next discuss. (See Elec. Code, former §§ 1401, 1403, 1451 (1954), now §§ 9050, 9051 [ballot title and summary]; former Pol. Code, § 1979, subd. 3 (1931 & 1933).)

[16]   Article I, section 16 of the state Constitution provides: Trial by jury is an inviolate right and shall be secured to all . . . ." (Formerly, this right was set out in article I, section 7.) See *In re Ratti* (1978) 1978 Cal. PUC Lexis 1060, in which the Public Utilities Commission determined there was no right to a jury trial in contempt proceedings before that administrative agency.

such intention with respect to either constitutional provision. Indeed, nothing in the text of article XX, section 22, nor in any ballot analyses of the propositions presented to the voters in 1932, 1933 or 1954 states or suggests the interpretation for which respondent contends. Since its first iteration in 1932, article XX, section 22 has authorized the licensing and regulation of manufacturers, distributors and retailers of alcoholic beverages, and has, since its amendment in 1954, vested in the Department the authority to issue, discipline and revoke licenses of those so engaged. Nothing in the text of this constitutional provision, or fairly implicated by that text, addresses, concerns or limits the forum in which entities holding licenses issued by the Department must or may litigate any contractual disputes they may have between each other.

Were there any intent to require that contract disputes between holders of licenses issued by the Department be resolved in proceedings conducted before the Department, it is reasonable to conclude that such a requirement would have been specified in the text of the constitutional provision—and discussed in the materials circulated to voters prior to the elections.[17] And, assuming arguendo the restriction on forum and the limitation of rights which respondent asserts could be addressed by statute, then we would find such authority in a statute. Instead, we find none, as we next discuss.

B.    *Statutory Provisions and Their Application*

1.    Introduction

In its decision sustaining respondent's demurrer, the trial court relied on the text of section 23090.5, as well as that of article XX, section 22. In

---

[17]    No such intent is stated or suggested in the relevant ballot pamphlets. (See fn. 13, *ante*, and the accompanying text.)

16

addition to arguing the trial court correctly analyzed this statute, respondent relies on section 25750, which contains the grant to the Department of the authority to adopt regulations "as may be necessary or proper to carry out the purposes and intent of Section 22 . . . ." (§ 25750.)  As we now discuss, neither any section of the ABC Act, nor any regulation adopted thereunder, creates or limits the right of a licensee to sue another licensee in court for breach of contract.

   2. Discussion

In 1933, anticipating repeal of Prohibition, and as authorized by article XX, section 22, the Legislature enacted statutes to implement the state's regained authority to license the manufacture, distribution and retail sale of alcoholic beverages (see Stats. 1933, ch. 658, §§ 1–39, pp. 1697–1707.),[18] periodically revising them until, in 1954, the Legislature codified these statutes in the Alcoholic Beverage Control Act, Statutes 1953, chapter 152, sections 23000–23044, pages 955–958.[19]

Examining the ABC Act, we find extensive provisions focused on: licensing of entities involved in the alcoholic beverage industry (sections 23300–23455 and 23770–23794); suspension and revocation of licenses (sections 24200–24211); specifying labeling and container requirements and prohibitions (sections 25170–25243); seizure and forfeiture of alcoholic beverages manufactured or possessed in violation of the ABC Act and its regulations (sections 25350–25375); forbidding the sale of alcoholic beverages

---

[18] Section 39 of Statutes 1933, chapter, 658, page 1707, provided that these statutes would become effective "[i]f and when it shall become lawful . . . to manufacture, sell [etc.] intoxicating liquors for beverage purposes. . . ."

[19] Additional legislative changes have been made since 1954; those relevant to resolution of this matter are discussed in the text.

to minors (section 25658); controlling relationships between manufacturers and distributors, on the one hand, and retailers on the other (contained in a chapter entitled "Tied-House Restrictions," sections 25500–25512); regulatory provisions (sections 25600–25621); and administrative provisions (sections 25750–25762).[20]

Failure to comply with the ABC Act or with the regulations adopted under its authority, carries with it the potential for "suspension or revocation" of the license issued to the registrant by the Department for a reason set out in sections 24200 et seq."

Section 23090.5, a key to the ruling below, provides: "No court of this state, except the Supreme Court and the courts of appeal to the extent specified in this article, shall have jurisdiction to review, affirm, reverse, correct, or annul any order, rule or decision of the department or to suspend, stay, or delay the operation or execution thereof, or to restrain, enjoin, or interfere with the department in the performance of its duties, but a writ of mandate shall lie from the Supreme Court or the courts of appeal in any proper case."

The plain meaning of this statute limits its application to review of matters first adjudicated in administrative proceedings before the

---

[20] The statute upon which appellant relies in support of its complaint, section 25509, is within the chapter on Tied-House Restrictions. These provisions were enacted over time to limit any influence that manufacturers and distributors may exert over retailers. (*California Beer Wholesalers Assn., Inc. v. Alcoholic Bev. etc. Appeals Bd.* (1971) 5 Cal.3d 402, 407–408 [discussing history of tied-house restrictions].)

18

Department.[21]  It does not concern in any way the allocation of jurisdiction in the first instance.

Thus, this statute is not authority for the conclusion reached by the trial court that this provision of the ABC Act confers jurisdiction on the Department in the first instance to hear contract disputes between its licensees; instead, it relates only to appeals from Department actions. Further, we find no provision of the ABC Act which addresses the issue of the proper forum in which a retailer, distributor or manufacturer may or must seek resolution of any dispute which it may have with another licensee.

Case authority supports our conclusion.  In *Department of Alcoholic Beverage Control v. Locker* (1982) 129 Cal.App.3d 381, 390, Division Three of this court held that section 23090.5 was "completely inapplicable" to determine the forum for an action to abate a nuisance brought under section 25604 and Penal Code section 11200, and did not divest the superior court of jurisdiction to adjudicate the matter there presented because it was not one to "review, affirm, reverse, correct, or annul any order, rule, or decision" of the department."  (*Locker,* at p. 390.)  A fair reading of this statute is that it concerns only appellate jurisdiction of matters that are otherwise properly within the administrative jurisdiction of the Department and as to which the Department has first issued an "order, rule or decision."

Respondent's reliance on cases that describe the broad powers of the Department to regulate the "dispensation of liquor within its borders" (*California v. La Rue* (1972) 409 U.S. 109, 120, fn. * (conc. opn. of Stewart J.),

---

[21]    Further, section 23090.5 is located in article 5 of chapter 1.5 of the ABC Act, which is entitled "Judicial Review"; use of this phrase indicates its focus is not on initial jurisdiction of the Department.  (See *People v. Garfield* (1985) 40 Cal.3d 192, 200 [while not determinative, chapter headings do state the subject of the legislative enactment].)

19

overruled in part by *44 Liquormart v. Rhode Island* (1996) 517 U.S. 484) and the power of the Legislature to pass laws to prevent "improprieties" in connection with the sale of alcoholic beverages (e.g., *Sail'er Inn, Inc. v. Kirby* (1971) 5 Cal.3d 1, 20–21) for its contention that the claims asserted in appellant's complaint must be adjudicated in administrative proceedings before the Department is also misplaced.  These cases address the duty of the Department to provide "strict, honest, impartial and uniform administration and enforcement of the liquor laws throughout the State" in the context of regulation of the conduct of licensees qua licensee.  (*Kirby v. Alcoholic Bev. etc. Appeals Bd.* (1973) 33 Cal.App.3d 732, 735.)  These are regulatory issues involving compliance with license requirements and the regulation of the conduct of licensees to assure compliance with licensing statutes.  The cases respondent cites do not address in any manner issues of enforcing the terms of contracts for purchase and sale of alcoholic beverages entered into by licensees.

Indeed, the statement of legislative purpose contained in the ABC Act differentiates between the requirements of *licensing* to engage in a trade or business, on the one hand, and the elements of *enforcing a contract* between two parties—whether or not licensed—on the other.  This demarcation is expressed in section 23001, which sets out the purpose of the ABC Act:  to "exercise the police powers of the State to eliminate the evils of unlicensed and unlawful manufacture, selling and disposing of alcoholic beverages, and to promote temperance . . . ."  There is no mention in this statement of legislative purpose of controlling litigation between licensees over matters of contract between them.

Further, the ABC Act contains implicit recognition that the Department is not the exclusive forum for matters affecting its licensees.

20

Section 24200, subdivision (b) expressly recognizes that other laws may apply to entities holding its licenses. That section provides that "other penal provisions of law of this state" may give rise to criminal prosecution and punishment as well as to licensing action by the Department. And, while section 25658 provides that sales of alcohol to minors is illegal, a violation of that provision is not prosecuted in an administrative proceeding before the Department, but in a criminal court and according to provisions of the Penal Code.[22]

A second example further illustrates the error by the trial court in this case in its holding that the Department has exclusive jurisdiction of this matter. In *People v Schlimbach* (2011) 193 Cal.App.4th 1132, 1145, Division Three of this court addressed the argument that the Department has exclusive jurisdiction to seek to enjoin sales of alcohol to obviously intoxicated persons under section 25602, subdivision (a), and, for that reason, the Los Angeles City Attorney was supposedly precluded from seeking an injunction under a different statutory plan, Penal Code sections 11200-11207.[23] In considering Schlimbach's contention on appeal that the judgment

---

[22]    Nor does the circumstance that this penal offense is set out in the ABC Act make state and federal constitutional provisions governing criminal procedure inapplicable to persons charged with violating it. (See *People v. Smith* (1949) 94 Cal.App.2d Supp. 975, 977; accord, *People v. Johnson* (1947) 81 Cal.App.2d Supp. 973, 975, both overruled on other grounds in *Paez v. Alcoholic Beverage Control Appeals Bd.* (1990) 222 Cal.App.3d 1025, 1027.)

[23]    Section 25602, subdivision (a) provides: "Every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to any habitual or common drunkard or to any obviously intoxicated person is guilty of a misdemeanor."
       Penal Code sections 11200–11207 contain the terms of the Unlawful Liquor Sale Abatement Act. That act declares places where liquor is

21

entered in that action "impeded on the exclusive jurisdiction of the [Department]" (193 Cal.App.4th at p. 1139), our Division Three colleagues acknowledged that section 25602.2 provides, "'The director [of the Department] may bring an action to enjoin a violation or the threatened violation of subdivision (a) of Section 25602,'" but nevertheless rejected Schlimbach's argument that this provision of the ABC Act restricts the authority to seek such an injunction to the Department director.  In so ruling, the court stated, "There is nothing in [ ] section 25602.2 which suggests it provides the only remedy for violations of [ ] section 25602.  Indeed, it does not. . . . [¶] . . . [¶]  Schlimbach's second argument is that the administrative jurisdiction of the ABC is exclusive, preventing the trial court from issuing an injunction which imposes any restrictions on [the defendant's] license to sell alcohol.  While it is undisputed that the California Constitution gives the ABC exclusive jurisdiction to license and regulate the 'manufacture, importation and sale of alcohol,' the ABC's exclusive jurisdiction to do so does not preempt an authorized party from seeking to enjoin a nuisance under the Unlawful Liquor Sale Abatement Law.  (See *Covert v. State Board of Equalization* (1946) 29 Cal.2d 125, 130 [the Unlawful Liquor Sale Abatement Law authorizes an abatement proceeding against the building or place used, it does not permit any attack on the license].)"  (*Schlimbach, supra*, 193 Cal.App.4th at pp. 1145-1146.)

Further, in the context of preemption of city ordinances, it has been established that the exclusive grant of jurisdiction to the Department does not preempt enforcement of ordinances which "may have some indirect impact on the sale of alcoholic beverages" if they do not seek to control sales

---

unlawfully sold to be "a nuisance which shall be enjoined, abated and prevented, whether it is a public or private nuisance."  (Pen. Code, § 11200.)

of alcohol. (*Korean American Legal Advocacy Foundation v. City of Los Angeles* (1994) 23 Cal.App.4th 376, 389.) Indeed, "a city ordinance addressing nuisance problems associated with alcoholic beverage sale establishments does not improperly regulate preexisting . . . licensees." (*City of Oakland v. Superior Court* (1996) 45 Cal.App.4th 740, 747.) While the ABC's exclusive right to regulate the sale and purchase of alcohol may prevent a city from enacting ""such regulatory measures as 'restrictions as to the class of persons to whom liquors may be sold, and as to the hours of the day and the days of the week during which places of sale may be open,"" it does not preempt an ordinance that "does not directly affect the licensee's ability to sell alcoholic beverages to a willing purchaser." (*California Restaurant Assn. v. City of Los Angeles* (1987) 192 Cal.App.3d 405, 410–411.) "[F]or example, an ordinance requiring the posting of health warnings where alcoholic beverages are sold is not preempted. [Citation.]" (*People v. Schlimbach, supra,* 193 Cal.App.4th at p. 1146.)[24]

And, in *People v. Deibert* (1953) 117 Cal.App.2d 410, an appeal from a conviction for selling alcohol to a minor in violation of former Welfare and Institutions Code section 702, this court expressly rejected the contention that article XX, section 22 and the ABC Act "cover the entire field of liquor control and any violations thereof." (*Deibert*, at p. 417.)[25]

---

[24]    Nor has respondent identified any specific provision of the ABC Act that states or suggests it abrogates common law or other remedies available to licensees under that statute.

[25]    In its ruling granting respondent's demurrer, the trial judge relied in part on *Daniel v. Board of Police Commissioners* (1961) 190 Cal.App.2d 566, disapproved of on other grounds in *Burton v. Municipal Court* (1968) 68 Cal.2d 684, 693). In *Daniel*, Division One of this court upheld a city ordinance forbidding the operation of a public place where food or beverages were sold if the establishment also provided any form of live entertainment

23

Respondent's reliance on the authority contained in section 25750, authorizing the Department to adopt regulations necessary and proper to carry out the purposes of article XX, section 22, for the assertion that appellant can vindicate its contract dispute with respondent by filing an accusation with the Department, ignores the nature of the proceeding that would result, and that there are no regulations promulgated to provide for the adjudication of any contract disputes between licensees.  Neither any provision of the ABC Act nor any regulation adopted pursuant to that act addresses how such a claim for contract damages would be made, or how it would be processed or adjudicated; nor does any statute or any regulation indicate the source of the Department's authority to order the payment of the balance due, if any, to the successful claimant.  (See Cal. Code Regs., tit. 4, div. 1, arts. 2–24.)

III.  **The Cause of Action for Unfair Competition**

In its fifth cause of action, appellant alleges respondent "has engaged in unlawful, unfair, and deceptive business practices" based on its collection of amounts in excess of the 1 percent charge which appellant contends is the maximum charge permitted by section 25509.  Appellant seeks restitution of

---

unless the proprietor had first obtained a permit.  In the course of its opinion, the court did state, "It is apparent that the state has preempted the field of regulating the sale of liquor."  (190 Cal.App.2d at p. 570)  Nothing in that opinion, however, suggests that the state had barred private actions between holders of licenses under the ABC Act from litigating in a court their contract disputes.  Indeed, the court upheld the city ordinance on the basis that "It is apparent that the purpose of the [ordinance] is not to regulate the liquor business but . . . to regulate the kind of 'live' entertainment that is furnished in public places. . . .  The state has not preempted the field or area covered by [the ordinance]."  (*Daniel,* at p. 571.)  As applied to the present issue, it is at least equally the case that the state has not barred litigation between licensees covering the commercial aspects of their contractual relationships.

24

the amounts of carrying charges previously paid and an injunction against respondent from collecting these charges in the future.

The trial court sustained respondent's demurrer to this cause of action on the same basis as it applied to the other causes of action in appellant's complaint, i.e., that "another statutory scheme provides the exclusive means for resolving [such] disputes," relying in part on our Supreme Court's holding in *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081.

Respondent argues on appeal that this ruling was correct because the issue presented requires determination of the meaning of section 25509, and that determination is within the "exclusive jurisdiction of an administrative agency dedicated to uniformly deciding such questions (the Board of Equalization in *Loeffler*, ABC here)." For the reasons we set out, *ante*, the trial court erred in concluding that the Department has exclusive jurisdiction over commercial disputes between licensees. Also contrary to respondent's assertion, the Department's view of the meaning of the statutes at issue is neither exclusive nor primary. (See, e.g., *Yamaha Corp. of America v. State Bd. of Equalization, supra,* 19 Cal.4th at pp. 7–8 [agency power to construe a statute is "contextual"].) In the present case, as in *Yamaha*, the court's power to determine the meaning of the relevant statutes is independent of any construction by the agency.

As appellant argues, a viable claim for unfair competition may be based on a violation of a statute, even when the power to enforce a particular statute may also be entrusted by the Legislature to a state agency; particularly so when the grant of jurisdiction to the agency is not exclusive, as in this instance for reasons we have discussed, *ante.*

25

*A.	The Unfair Competition Law Encompasses Violations Based on "Borrowed Statutes"*

Appellant rightly focuses our attention on the scope of relief potentially available to it under the Unfair Competition Law (UCL) set out in section 17200.  Focusing on this statute's prohibition of "any unlawful, unfair or fraudulent business act or practice," appellant points out that the scope of the UCL is quite broad; because the statute is framed in the disjunctive, a business practice need meet only one of the three criteria to be considered unfair competition.  (*Kasky v. Nike, Inc.*  (2002) 27 Cal.4th 939, 949; *South Bay Chevrolet v. General Motors Acceptance Corp*. (1999) 72 Cal.App.4th 861, 878.)

An action for unfair competition is viable if the underlying statute constitutes an unlawful business practice.  "Virtually any law or regulation—federal or state, statutory or common law—can serve as [a] predicate for a § 17200 'unlawful' violation."  (Stern, Bus. & Prof. Code, § 17200 Practice (The Rutter Group 2017) ¶ 3:56, p. 3–14.)  Examples of UCL claims properly alleging "unlawful" conduct, while not boundless, are seemingly so.  (E.g., the UCL allows a private party to sue to recover unauthorized telephone charges notwithstanding the similar (and more extensive) authority of the Public Utilities Commission (*Elder v. Pacific Bell Telephone Co*. (2012) 205 Cal.App.4th 841, 854 [PUC did not have primary jurisdiction over action to recover unauthorized charges].)  As our Supreme Court stated in *Korea Supply Co. v. Lockheed Martin Corp*. (2003) 29 Cal.4th 1134:  "Section 17200 'borrows' violations from other laws by making them independently actionable as unfair competitive practices.  [Citation.]"  (*Id*. at p. 1143.)

Further, section 17205 specifically provides, "Unless otherwise expressly provided, the remedies or penalties provided by [the UCL] are

26

cumulative to each other and to the remedies or penalties available under all other laws of this states." Under section 17204, a private appellant may bring a UCL action even when "'the conduct alleged to constitute unfair competition violates a statute for the direct enforcement of which there is no private right of action.' [Citation.]" (*Kasky v. Nike, Inc.*, *supra*, 27 Cal.4th at p. 950, quoting *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 565.) By enacting the UCL, and not by virtue of particular predicate statutes, "the Legislature has conferred upon private plaintiffs 'specific power' [citation] to prosecute unfair competition claims." (*Stop Youth Addiction, Inc.,* at p. 562, quoting *People v. McKale* (1979) 25 Cal.3d 626, 633.) Thus, even where a state agency may have jurisdiction over a licensee, the UCL may provide a private remedy.

B.      *Cases Relied on by Respondent Are Unpersuasive*

Respondent asserts that the present case is not governed by the principles just discussed. Rather, in respondent's view, appellant's cause of action for unfair competition is barred by the holding in *Loeffler v. Target Corp., supra,* 58 Cal.4th 1081. We disagree.

The constitutional and statutory plan at issue in *Loeffler* is materially different from that presented in this case. First, the state constitutional provision at issue in *Loeffler* (article XIII, section 32) expressly bars any court action prior to payment of the tax being disputed. Thereafter, a taxpayer is allowed to sue to recover any tax claimed to be illegal; and must do so according to procedures set out in our statutes.[26] Our Supreme Court

---

[26]     Article XIII, section 32 of the state Constitution provides: "No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of a tax claimed to be illegal, an action may be maintained to

27

explained in *Loeffler* that "the policy behind the provision is to ensure that the state may continue to collect tax revenue during litigation in order to avoid unnecessary disruption of public services that are dependent on that revenue. [Citation.] We have observed that delay in tax collection "'may derange the operations of government, and thereby cause serious detriment to the public.'" [Citation.]" (*Loeffler, supra*, 58 Cal.4th at p. 1101.)

To implement that constitutional mandate, our Legislature has enacted an "exceedingly closely regulated, complex, and highly technical" set of statutes and a "comprehensive administrative scheme . . . to resolve these and other tax questions and to govern disputes between the taxpayer [the business entity] and the Board." (*Loeffler, supra*, 58 Cal.4th at p. 1103.)

Neither the constitutional nor statutory provisions applicable in this case contain any similar proscriptions. Indeed, there are many significant differences between the constitutional and statutory provisions governing taxes, on the one hand, and those regulating the manufacture, distribution and retail sale of alcohol beverages, on the other. They include vastly different constitutional mandates: Article XX, section 22 contains no command regarding where and when a licensee under the ABC Act may sue at all, let alone in any way similar to that in article XIII, section 32. The ABC Act itself is silent on provisions for litigation by licensees concerning their contractual relations, while the massive Revenue and Taxation Code (comprised of 41,001 sections) and the extensive regulations adopted thereunder (Cal. Code Regs., tit. 18) contain specific provisions concerning litigation by taxpayers seeking refunds. (E.g., Rev. & Tax Code, §§ 5148 [property taxes], 19381 [franchise and income taxes], 19382 [same].) The

recover the tax paid, with interest, in such manner as may be provided by the Legislature."

28

very subject matters differ materially; for example, there is no danger to the pubic fisc in a retailer of alcoholic beverages seeking to regain amounts it claims it overpaid to a distributor. That may not be the case when a retailer sues the state seeking return from the state treasury of sales taxes previously paid.

And in closely regulated and other fields in which parties are licensed and subject to supervision by boards and departments, there are numerous cases affirming the ability of persons to seek redress by utilizing statutes regulating licensees in those fields through unfair competition actions. (E.g., *Zang v. Superior Court* (2013) 57 Cal.4th 364 [insured sued insurer for unfair competition for its advertising claims promising to provide timely insurance coverage notwithstanding Insurance Code ban on private actions for false insurance practices]; *Stevens v. Superior Court* (1999) 75 Cal.App.4th 594 [affirming right of individual to sue to enforce provisions of Insurance Code requiring agents, brokers and auto dealers to hold insurance licenses when transacting business of insurance].)

Relying on *Loeffler*, respondent argues that interpretation of section 25509 must first be committed to determination by the Department because "there is exclusive jurisdiction before an administrative agency dedicated to uniformly deciding such questions (the Board of Equalization in *Loeffler*, ABC here)." Respondent errs for at least two reasons. First, we established in section II of this opinion that the jurisdiction of the Department is not exclusive. And, as just discussed, respondent's argument is based on a supposed analogy between the Department and the State Board of Equalization which is erroneous.

Second, as noted *ante*, while determinations of administrative agencies as to the meanings of statutes may be given weight under appropriate

29

circumstances, the starting point is that a court may exercise its independent judgment when the issue presented is one of statutory interpretation. When not adopted as a formal regulation, an agency's interpretation of statutory language is entitled to little deference. (*Yamaha Corp. of America v. State Bd. of Equalization, supra,* 19 Cal.4th at pp. 6–8; see *Culligan Water Conditioning v. State Bd. of Equalization, supra,* 17 Cal.3d 86, 92; *Mackey v. Bristol West Ins. Services of Cal., Inc.* (2003) 105 Cal.App.4th 1247, 1263 [agency interpretation in informational booklet entitled to less weight than formal regulation].)

Appellant's claim under the UCL is not foreclosed by laws regulating the licensing of distributors of alcoholic beverages, including respondent, and may be based on violations of statutes (and regulations) applicable to such licensees.

## IV.    <u>Unresolved Statutory Issue</u>

Because the trial court concluded the Department had exclusive jurisdiction over the issues raised in appellant's complaint, it did not address appellant's contention concerning the proper construction of section 25509. That issue is critical to appellant's causes of action. On remand, the trial court will have the opportunity to make a determination on this issue. (See *City of Rancho Cucamonga v. Warner Consulting Services, Ltd.* (1989) 213 Cal.App.3d 1138, 1346.)[27]

---

[27]    Also on remand, the trial court will have the opportunity to address appellant's first cause of action, which seeks a declaration of rights with respect to section 25509.

## DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings.  Appellant shall recover its costs on appeal.

<u>CERTIFIED FOR PUBLICATION</u>.


GOODMAN, J.[*]

We concur:


ASHMANN-GERST, Acting P.J.


CHAVEZ, J.

---

[*]	Retired judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.