Filed 6/30/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ADRIANA R. VERA,<br><br>　　　　Plaintiff and Appellant,<br><br>v.<br><br>REL-BC, LLC, et al.,<br><br>　　　　Defendants and Respondents;<br><br>SNL REAL ESTATE SOLUTIONS, LLC,<br><br>　　　　Defendant and Respondent. | A155807<br><br>(Alameda County<br>Super. Ct. No. RG14750488) |
| SNL REAL ESTATE SOLUTIONS, LLC,<br><br>　　　　Cross-complainant and Respondent,<br><br>v.<br><br>ADRIANA R. VERA,<br><br>　　　　Cross-defendant and Appellant. | A156823<br><br>(Alameda County<br>Super. Ct. No. RG14750488) |
| ADRIANA R. VERA,<br><br>　　　　Plaintiff and Appellant,<br><br>v.<br><br>REL-BC, LLC, et al.,<br><br>　　　　Defendants and Appellants;<br><br>SNL REAL ESTATE SOLUTIONS, LLC,<br><br>　　　　Defendant and Respondent. | A159141<br><br>(Alameda County<br>Super. Ct. No. RG14750488) |

1

The trial court entered summary judgment on Adriana Vera's complaint against REL-BC, LLC (REL-BC); Buildzig, Inc. (Buildzig); SNL Real Estate Solutions, LLC (SNL); Carlos Plazola; and Laura Blair (collectively, "Sellers") relating to Vera's purchase of a home in Oakland. The court ruled the action was barred by the three-year statute of limitations for actions based on fraud in Code of Civil Procedure[1] section 338, subdivision (d) (section 338(d)). The trial court awarded attorneys' fees to Sellers except for REL-BC, whose request the trial court denied.

Vera appeals from the judgment and the awards of attorneys' fees. In challenging the judgment, she contends that the trial court erred in applying the three-year statute of limitations to her breach of contract claim and that the court ignored disputes of material fact concerning when the limitations period began to run. In her challenge to the fees awards, she argues that the court should not have awarded fees to Buildzig, Plazola, and Blair based on the purchase agreement's fees provision because the trial court determined her claims were based on fraud, not the contract, for purposes of the statute of limitations. She also asserts the trial court should have excluded from SNL's award those amounts attributable to its cross-complaint against her broker and real estate agent. REL-BC cross-appeals the trial court's denial of its fees request, arguing it was entitled to fees even though it had dissolved.

---

[1] Undesignated statutory citations are to the Code of Civil Procedure.

The trial court correctly concluded that Vera's breach of contract claim was based on fraud and therefore subject to section 338(d). The trial court also correctly concluded that the undisputed facts demonstrate Vera's claims based on fraud accrued more than three years before she filed suit and were therefore time-barred. We therefore affirm the judgment. As to the fees awards, Vera has not shown the trial court abused its discretion in awarding fees related to SNL's cross-complaint. However, we agree with REL-BC that it was authorized to request fees despite its dissolution. We therefore affirm the fees awards to SNL, Buildzig, Plazola, and Blair, and reverse the denial of fees to REL-BC.

## I.  BACKGROUND

In July 2011, REL-BC and SNL bought a property in Oakland to remodel and resell. Buildzig was one of REL-BC's managers, Plazola was Buildzig's chief executive officer, and Blair was its chief operating officer and general counsel. After Ceferino Vega renovated the property for REL-BC and SNL, in November 2011 the companies signed an agreement to sell it to Vera.

The purchase agreement obligated REL-BC and SNL to disclose known material facts and defects affecting the property. Pursuant to that provision, and as independently required by statute (Civ. Code, § 1102.6), in November 2011 REL-BC and SNL provided disclosures in which they identified material conditions of the property. In those documents, REL-BC and SNL said they were not aware of any significant defects or malfunctions (including past defects that had been repaired) with respect to various components of the property, including the sewers and drainage. The disclosures also stated that

3

REL-BC and SNL were not aware of any water intrusion, leaks from the sewer system or any pipes, work or repairs that had been done without permits or not in compliance with building codes, or any material facts or defects that had not otherwise been disclosed to Vera.

Vera hired her own inspector, Eric Burtt, to examine the property and she accompanied Burtt during the inspection. Burtt's report stated that the basement was well below the exterior grade and several areas showed a history of water intrusion, including areas that had been recently tiled and painted. The report stated, "Expect moisture and water intrusion during periods of wet weather!!" Burtt also noted that there was a sump pump in the basement that was not operating correctly.

Burtt observed through a vent that there had been some prior work or repair to the front stairs leading up to the house, but he did not inspect it because the area was inaccessible. He recommended further inspection. In light of the considerable remodeling, some of which appeared to be peculiarly or imperfectly done, Burtt also advised Vera to obtain the property's complete permit history to verify that the work was permitted and inspected. Vera acquired the permit history for the property and sent it to Burtt, but Vera was unable to recall later whether she discussed the permit history with him.

Vera also had a sewer inspection done by Rhino Rooter. That inspection revealed that there was a major disconnect at the house cleanout that was leaking a large amount of water into the crawl space. REL-BC and SNL agreed to repair several items noted in the Burtt report, including the sump pump and the sewer disconnect.

Escrow closed on December 2, 2011, but the sewer line still had not been corrected. In January 2012, a large amount of water flooded into the basement, apparently because the repairs to the sewer line were not done correctly. Vera contacted Laura Blair, who at the time lived across the street. Blair came over and told Vera that it was not necessary to obtain another inspection of the sewer line because the water coming into the basement was rainwater. Blair told Vera that rain had previously flowed down the foundation wall when there was a sewer problem. Sellers later admitted to Vera that the earlier sewer work had been completed without a permit and that Vega was unlicensed, though they told Vera that Vega's work had been done under the supervision of a licensed contractor.

In May 2014, the exterior stairs leading up to the house began collapsing. Vera asked Burtt to investigate. Burtt concluded that there was no support for the stairs. Burtt also said that the unsupported joists holding up the stairs were the same repairs he had observed through the vent when he inspected the property in November 2011.

On December 5, 2014, three years and three days after the close of escrow, Vera filed her initial complaint against Sellers. Vera's second amended complaint alleged six causes of action: negligence (first and sixth causes of action), breach of warranty (second cause of action), breach of contract (third cause of action), fraud (fourth cause of action), and negligent misrepresentation (fifth cause of action). Sellers moved for summary judgment based on, among other grounds, the three-year statute of limitations in section 338(d) for actions based on fraud or mistake. The trial court granted the motion and entered judgment for Sellers. Vera appealed.

Sellers then requested an award of attorneys' fees, based on a clause in the purchase agreement entitling the prevailing party in any action arising out of the agreement to recover their attorney's fees. The trial court granted SNL's request for attorney's fees, including fees related to a cross-complaint SNL filed against Vera's broker and real estate agent. The trial court denied REL-BC's request for fees because REL-BC had dissolved and therefore lacked capacity to request fees. The trial court granted the fees requests of Buildzig and the individual defendants, though it awarded a slightly lower amount than they requested. Vera and REL-BC cross-appealed this ruling.

We consolidated the three appeals.

## DISCUSSION

### I. Summary Judgment

"We review the grant of summary judgment de novo and decide independently whether the parties have met their burdens and whether there are triable issues of material fact. [Citation.] The defendant has the initial burden on summary judgment to show that undisputed facts establish an affirmative defense. [Citation.] Once the defendant meets that burden, the burden shifts to the plaintiff to show a triable issue of material fact regarding the defense. [Citation.] We review the evidence in the light most favorable to the plaintiff. [Citation.] Although application of the statute of limitations is normally a question of fact, the question becomes one of law when the evidence is susceptible of only one reasonable conclusion." (*Filosa v. Alagappan* (2020) 59 Cal.App.5th 772, 778.)

6

## A. Applicable statute of limitations

Vera first contends the trial court erred in applying the three-year statute of limitations in section 338(d) for actions based on fraud to her breach of contract cause of action. "To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the 'gravamen' of the cause of action. [Citations.] '[T]he nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations under our code.' " (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22–23.) "In determining whether an action is on the contract or in tort, . . . it is the nature of the grievance rather than the form of the pleadings that determines the character of the action. If the complaint states a cause of action in tort, and it appears that this is the gravamen of the complaint, the nature of the action is not changed by allegations in regard to the existence of or breach of a contract. In other words, it is the object of the action, rather than the theory upon which recovery is sought that is controlling." (*Automobile Insurance, v. Union Oil Co.* (1948) 85 Cal.App.2d 302, 306.)

We review the allegations in Vera's complaint to assess the nature of her breach of contract claim for the purposes of summary judgment. (*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 444 [" 'scope of the issues to be properly addressed in [a] summary judgment motion' is generally 'limited to the claims framed by the pleadings' "].) Vera alleged that Sellers promised in the purchase agreement to provide her a disclosure statement listing all material facts known to the Sellers. She alleged the Sellers failed to disclose and misrepresented defects with the property including prior

7

water intrusion, structural defects, and the fact that the renovations and remodeling work were not permitted or performed by a licensed contractor. She further asserted that Sellers performed labor and installed materials in the project in a negligent manner, which deprived her of the full use and enjoyment of the property after purchase. After alleging causes of action for negligence and breach of warranty based on these facts, Vera incorporated all prior allegations by reference into her cause of action for breach of contract. She claimed that Sellers agreed in the purchase agreement to provide a disclosure statement, and the agreement's implied covenant of good faith and fair dealing required Sellers to disclose defects. She finally alleged, "In breach of the express provisions of the contract and the implied covenant of good faith and fair dealing, [Sellers] concealed defects, failed to make repairs of items they knew were deficient, and otherwise misrepresented the condition, desirability, and value of the . . . property."

These allegations state in essence that Sellers harmed Vera by failing to disclose material facts to her. We agree with the trial court

that fraud is the gravamen of this claim.[2]  Section 338(d) establishes a

three-year period of limitations for an "action for relief on the ground of

fraud of mistake," so this provision applies to Vera's breach of contract

claim.  It makes no difference that the breach of contract claim rests on

a contractual duty to disclose material facts, while her fraud claim

rests on the same duty under tort law.  It is black letter law that

section 338(d) applies regardless of the form of the action a plaintiff

chooses or legal theory she advances.  Section 338(d)'s "language is

comprehensive and the statute, with its favorable accrual rule, is

accordingly applied to any form of action, for any kind of relief.  In

other words, if fraud or mistake is the basis of the legal injury (the

'ground' of the action), the section applies regardless of whether the

complaint seeks legal or equitable relief or pleads a cause of action in

---

[2] In a handful of sentences scattered in her reply brief, Vera
asserts that she pled a breach of contract independent of her fraud
allegations by alleging that Sellers failed to make repairs to the sewer
line as they promised in an addendum to the purchase agreement.
Vera did not raise this argument in her opening brief or in a separate
heading, so we deem it forfeited.  (*Provost v. Regents of University of
California* (2011) 201 Cal.App.4th 1289, 1294 ["we do not consider all of
the loose and disparate arguments that are not clearly set out in a
heading and supported by reasoned legal argument. . . . In addition, we
will not address arguments raised for the first time in the reply brief"].)
Even had she properly raised the argument, Vera might be precluded
from relying on such a theory because when asked in discovery to
describe each breach of contract alleged in her pleadings, Vera
mentioned only Sellers' failure to make accurate and complete
disclosures, not their failure to repair the sewer line.  (*Burke v.
Superior Court* (1969) 71 Cal.2d 276, 281 [interrogatories "used to
clarify the contentions of the parties . . . are an adjunct to the
pleadings" and should be used liberally "for the purpose of clarifying
and narrowing the issues made by the pleadings"].)

tort or contract." (3 Witkin California Procedure 5th Actions (2020) § 653.)

In *Day v. Greene* (1963) 59 Cal.2d 404, 405–406, the plaintiff sued to establish a constructive trust on an estate based on an oral contract to make a will. The California Supreme Court held that the statute of limitations for fraud now contained in section 338(d) applied because the complaint alleged a violation of a confidential relationship that amounted to constructive fraud.[3] (*Id.* at p. 411.) The court explained, "The fact that a breach of contract is involved is not decisive as to the applicable statute of limitations." (*Ibid.*) *Day* in turn relied on *Souza & McCue Construction Co. v. Superior Court* (1962) 57 Cal.2d 508. The California Supreme Court there held that a construction company adequately stated a cause of action in contract. (*Id.* at p. 511.) But it also held that the statute of limitations for fraud now contained in section 338(d) governed the accrual of that claim because the claim was "based on a fraudulent breach of a contractual duty." (*Ibid.*) Similarly here, Vera has alleged the fraudulent breach of a contractual duty to disclose material facts about the condition of the property, so her claim is subject to the statute of limitations in section 338(d).

Vera tries to escape cases like these by arguing that the trial court and Sellers failed to cite any case in which a court applied the

---

[3] Subdivision (d) of section 338 was numbered as subdivision (4) of the statute until 1988. The Legislature amended the statute at that time to list the subdivisions by letter but without changing the substance of subdivision (d). (Stats. 1988 (1987–1988 Reg. Sess.) ch. 1186, § 1.) For simplicity, when discussing or quoting decisions that refer to the statute of limitations in section 338, subdivision (4), we cite to its current location in subdivision (d).

10

three-year statute of limitations for fraud to a claim for breach of written contract.  However, courts routinely bar causes of action, including for breach of written contract, where the gravamen rule dictates a shorter statute of limitations.  (E.g., *Foxen v. Carpenter* (2016) 6 Cal.App.5th 284, 291–292 [breach of contract and other claims against attorneys arose from professional services and were barred by the one-year limitations rule in section 340.6]; *Curtis v. Kellogg & Andelson* (1999) 73 Cal.App.4th 492, 503 [gravamen of breach of contract and breach of fiduciary duty claims was malpractice, so they were barred under two-year statute of limitations]; *Giffin v. United Transportation Union* (1987) 190 Cal.App.3d 1359, 1362, 1365 [gravamen of union member's breach of contract claim against union was a breach of the union's duty to represent its member in good faith, so the plaintiff's claim was barred under the three-year statute of limitations for liability created by statute]; *McAdams v. McElroy* (1976) 62 Cal.App.3d 985, 1001 [claim for reformation of written partnership agreement based on mistake was not covered by four-year catchall period in section 343 but instead by section 338(d) and was barred].)  Vera does not cite (and we are not aware of) any authority holding that claims for breach of written contract are exempt from the rule that the gravamen of a claim governs the applicable statute of limitations, nor does she point to any authority that the rule operates only to extend a limitations period.

Vera also resists the application of section 338(d) by arguing her causes of action involve different primary rights, with her fraud claim resting on the primary right to be told the truth in transactions and her contract claim resting on the primary right to demand performance of a

11

contractual duty.[4]  It is not clear that the primary rights analysis is the proper rubric for determining the applicable statute of limitations.  (See *Choi v. Sagemark Consulting* (2017) 18 Cal.App.5th 308, 336 (*Choi*) [use of primary rights theory to select proper statute of limitations "would be somewhat novel here, given that the 'primary right theory has a fairly narrow field of application' most commonly invoked 'when a plaintiff attempts to divide a primary right and enforce it in two suits,' " quoting *Crowley v. Katleman* (1994) 8 Cal.4th 666, 682]; *Colebrook v. CIT Bank, N.A.*, (2021) 64 Cal.App.5th 259, 263 [primary right theory is invoked " ' "when a plaintiff attempts to divide a primary right and enforce it in two suits.  The theory prevents this result by either of two means:  (1) if the first suit is still pending when the second is filed, the defendant in the second suit may plead that fact in abatement [citations]; or (2) if the first suit has terminated in a judgment on the merits adverse to the plaintiff, the defendant in the second suit may set up that judgment as a bar under the principles of res judicata" ' "].)

Even if we were to examine the issue through the lens of primary rights theory, however, the outcome would be the same.  Vera mistakes her legal theories of recovery for primary rights.  A primary right "is simply the plaintiff's right to be free from the particular injury suffered.  [Citation.]  It must therefore be distinguished from the legal theory on which liability for that injury is premised:  'Even where there

---

[4] Vera also asserts that her claims for negligence in construction and negligence in the sale of real estate were based on different primary rights than her fraud claim.  However, Vera does not argue the trial court erred in ruling those claims were time-barred.

are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.' [Citation.] The primary right must also be distinguished from the remedy sought: 'The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other.' " (*Crowley v. Katleman*, *supra*, 8 Cal.4th at pp. 681–682.) The particular injury Vera suffered, as alleged in her complaint, was buying a property worth less than she believed. She may have had contract and tort theories offering different remedies for this harm. But that does not change the fact that both theories sought to remedy the same harm and thus to vindicate the same primary right.[5]

## B. Accrual of cause of action

Vera next argues the summary judgment must be reversed because the trial court ignored disputes of material fact concerning when her claims accrued for the purposes of the limitations period in section 338(d). In general, a cause of action accrues when it is complete

_____

[5] For this reason, Vera's reliance on *Fujifilm Corp. v. Yang* (2014) 223 Cal.App.4th 326 is misplaced. In that case, the court held that Fujifilm was vindicating different primary rights when it filed first a lawsuit alleging breach of a settlement agreement and then a separate suit based on allegedly fraudulent transfers designed to avoid the obligations under the settlement agreement. (*Id.* at p. 332.) The court explained: "[B]ecause breaching a contract inflicts harm on a legally protected interest different from tortious conduct that renders uncollectable a judgment arising from the breach of contract, two different primary rights arise." (*Ibid.*) Vera alleges no similarly distinct interest in being free from tortious conduct intended to deprive her of the ability to obtain redress for the harm at issue here.

13

with all of its elements.  (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806.)  But section 338(d) provides that a cause of action based on fraud or mistake "is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."  Vera argues that this provision establishes that a cause of action for fraud accrues only based on actual knowledge of the facts constituting the fraud, unlike other causes of action that accrue based upon mere suspicion of wrongdoing.  She maintains that the decisions applying this discovery rule to start the running of a limitations period do so only when the plaintiff has admitted actual suspicion of wrongdoing, while here there is a factual dispute about the date of her knowledge.

The language of section 338(d) on its face might support Vera's interpretation that only actual knowledge and discovery will start the running of the statute, but it has long been settled that actual knowledge is not necessary.  "The courts interpret discovery in this context to mean not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff suspected *or should have suspected* that an injury was caused by wrongdoing.  The statute of limitations begins to run when the plaintiff has *information which would put a reasonable person on inquiry*.  A plaintiff need not be aware of the specific facts necessary to establish a claim since they can be developed in pretrial discovery.  Wrong and wrongdoing in this context are understood in their lay and not legal senses."  (*Kline v. Turner* (2001) 87 Cal.App.4th 1369, 1374, italics added; 3 Witkin California Procedure 5th, Actions § 659.)  "[T]he cases construing section 338, subdivision [d], *supra*, have held that plaintiff must

14

affirmatively excuse his failure to discover the fraud within three years after it took place, by establishing facts showing that he was not negligent in failing to make the discovery sooner and that he had no actual *or presumptive* knowledge of facts sufficient to put him on inquiry." (*Hobart v. Hobart Estate Co.* (1945) 26 Cal.2d 412, 437, italics added.)

As these cases' statements of the law demonstrate, Vera's contention that the discovery rule is triggered only by actual knowledge is incorrect. A fraud claim will accrue even without actual knowledge if a plaintiff knows facts that should raise suspicion and trigger a further investigation. "While resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112.)

Summary judgment was proper here. Even if Vera acquired actual knowledge later, as she contends, the only legitimate inference from the undisputed facts is that Vera should have been suspicious that she was injured by Sellers' wrongdoing and investigated more than three years before she filed suit. Vera alleged Sellers misrepresented or concealed four aspects of the property: (1) a history of water intrusion, which Sellers concealed by tiling over affected areas or covering them with drywall; (2) repairs that were unpermitted and completed by unlicensed contractors; (3) failure of the terra cotta sewer line; and (4) lack of structural framing supporting the front stairs. Sellers contend that the Burtt and Rhino Rooter reports contradicting these assertions gave Vera reason to investigate Sellers' alleged fraud,

15

so the tolling of the statute under the discovery rule ended when Vera received the reports before the close of escrow.

Vera argues the difference between Sellers' statements and her inspection reports demonstrates a dispute of fact, but this has it backwards. The stark disparity between the two is not proof of a triable issue regarding her discovery. Rather, the disparity proves as a matter of law that Vera's claims accrued because she had, at minimum, reason to be suspicious and should have investigated Sellers' fraud. Vera also argues Sellers' misrepresentations tolled the running of the limitations period by actively concealing their wrongdoing. She cites *Lobdell v. Miller* (1952) 114 Cal.App.2d 328, 334–335, in which the seller of a property prevented the buyers from discovering the true amount of income a property generated so that the statute of limitations for fraud did not start to run until after escrow. By contrast, Vera could and did hire inspectors who revealed or at least called into serious question the truth of Sellers' misrepresentations, so those misrepresentations did not postpone accrual of her claims.

On the water intrusion issue, the Burtt report noted "a history of water intrusion" into the areas that had since been tiled and covered with drywall, described evidence of dampness and water issues on the basement walls, and told Vera emphatically, "Expect moisture and water intrusion during periods of wet weather!!" The report also flagged the existence of a sump pump and the fact that the pump was in an unlined pit, which was causing soil to erode from underneath the foundation slab. These observations directly contradicted Sellers' statements that they were not aware of any water intrusion; issues

16

with water, moisture, or drainage at the property; or defects in drainage or sump pumps.

Similarly, the Rhino Rooter report that Vera obtained before close of escrow revealed a major disconnect on the side of the house that was leaking a large amount of water into the crawl space. This should have made Vera question Sellers' statements that they were not aware of any defects, including any prior defects that had been repaired, in the sewer system or any leaks from pipes at the property.

Regarding Sellers' misrepresentation of the permit history and licensing status, the Burtt report advised Vera to review the permit history and permit documentation for completeness and scope given the considerable remodeling work and the fact that some of the remodeling, such as the electrical panel, was "extremely peculiar" in certain respects. Vera did, in fact, obtain the permit history, and she passed it to Burtt to review. Although this permit history would not have revealed that Sellers' contractor was unlicensed, in conjunction with her and her inspectors' observations of the work performed at the property, it should have shown if Sellers' representations about permits were true or false.

The defects in the remodeling of the front stairs are somewhat different. Burtt noted that there had been some prior repairs to the front steps that were visible through an air vent, but the area was concealed so he recommended further inspection. Sellers contend this should have made Vera suspicious and prompted further investigation, in light of Burtt's later statement that the unblocked and unanchored joists that contributed to the collapse were the prior repairs he had noted in his earlier report. However, reading this evidence favorably to

Vera as we must, it does not establish that Burtt told Vera that the wood framing was or might be unsupported before she bought the property. Had Burtt believed the framing was insufficient, he likely would have noted that in his report. Rather, Burtt's later statement appears to mean only that the joists he later found to be unsupported were the same ones that he had partially observed through the vent.

Nonetheless, the lack of facts to put Vera on inquiry regarding the misrepresentation of the condition of the stairs does not defeat Sellers' summary judgment as a whole, nor does it trigger the application of a separate statute of limitations for that misrepresentation, as Vera contends. *Choi*, *supra*, 18 Cal.App.5th 308, is instructive. The plaintiffs there argued that they had separate causes of action for negligence against their financial planner based on separate instances of poor investment advice and that separate limitations periods applied to each of these causes of action. (*Id.* at pp. 334–335.) The *Choi* court was "not persuaded by this piecemeal interpretation of injury post hoc." (*Id.* at p. 336.) It held that because the series of injuries the plaintiffs alleged all traced to the same underlying conduct, the plaintiffs' claims for all of the injuries were subject to the same limitations period and time-barred. (*Id.* at pp. 337–338.) Similarly here, all of Vera's alleged injuries stemmed from the same underlying conduct by Sellers: selling a property based on misrepresentations about its condition. Accordingly, even if Vera had no knowledge to trigger a duty to inquire into one of those specific misrepresentations, her grounds for suspicion that Sellers had made several other serious misrepresentations nevertheless started the running of the limitations period.

18

Vera cites *Winston Square Homeowner's Assn. v. Centex West, Inc.* (1989) 213 Cal.App.3d 282, 287–289, which held that the separate statutes of limitations for patent and latent construction defects applied to different areas of damage that the plaintiff homebuyers claimed because they amounted to separate causes of action. (See §§ 337.1 [four-year period for actions for damages from patent construction defects], 337.15 [10-year period for actions for damages from latent construction defects].) She also cites *Snow v. A.H. Robins Co.* (1985) 165 Cal.App.3d 120, 134–135, which held that a plaintiff's fraud cause of action accrued later than her personal injury cause of action because the plaintiff initially knew only facts that suggested the defendants were negligent and later learned the facts suggesting they had made false statements. These decisions are not applicable because, as we concluded above, the statute of limitations for actions based on fraud set forth in section 338(d) applies to almost all of Vera's claims and she had reason to suspect Sellers had made false statements more than three years before she filed suit.[6] There is no basis to apply separate limitations periods for different misrepresentations that were all part of the same transaction.

Vera finally contends that summary judgment was improper because she suffered no injury until the misrepresented facts caused damage, such as the water intrusion in 2012 or the 2014 collapse of the stairs due to the insufficient support. She also points out that the sewer line was undergoing repairs during and after close of escrow, so

---

[6] The sole exception is Vera's claim for breach of warranty. The trial court granted Sellers' summary judgment motion as to that claim for other reasons, which Vera does not challenge on appeal.

19

her claim based on the defective repair could not have accrued until the repair was completed unsuccessfully. However, "[i]f the last element to occur in a tort action is damages, 'the statute of limitations begins to run on the occurrence of "appreciable and actual harm, however uncertain in amount," that consists of more than nominal damages.' " (*Choi*, *supra*, 18 Cal.App.5th at p. 323.) It does not matter if damage continues to occur. (*Spellis v. Lawn* (1988) 200 Cal.App.3d 1075, 1080–1081.) Here, Vera could have sued Sellers for misrepresenting the property immediately on close of escrow, because at that point she paid more for the property than she now alleges it was worth. (*Saunders v. Taylor* (1996) 42 Cal.App.4th 1538, 1543 ["to establish a common law cause of action for deceit in the sale of a piece of property, a buyer must offer evidence that the price he or she paid for the property was greater than the actual value of the property"].) The mere fact that some damage continued to occur or be discovered that might have increased the amount of damages to which she was entitled did not prevent the accrual of Vera's claims. (*Hacker v. Homeward Residential, Inc.* (2018) 26 Cal.App.5th 270, 273–274, 282 [damage for fraud in attempted purchase of real estate occurred when questionable assignment of deed of trust initially prevented plaintiff from acquiring property, not upon later foreclosure based on the deed of trust].)

In sum, the court did not err in granting summary judgment to Sellers.

## II. Attorney's Fees

Vera and REL-BC cross-appeal the trial court's ruling on Sellers' requests for attorney's fees. We review a trial court's award of

20

attorney's fees for abuse of discretion.  (*Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 817.)

## A.  Vera's challenges to the fees awards

Vera first argues the trial court erred in awarding SNL fees for litigation on its cross-complaint against Vera's real estate broker and agent.  She contends the attorney's fees provision in the purchase agreement allows the prevailing party to recover fees only in an action between the buyer and seller, and this provision does not encompass SNL's cross-complaint.  Second, Vera argues Buildzig, Plazola, and Blair were not entitled to attorney's fees under the purchase agreement because if her complaint was time-barred under section 338(d) due to its being based on fraud, her complaint could not also be based on the purchase agreement.

We need not spend long on these arguments, for which Vera cites no authority.  The trial court granted SNL's request for fees related to the cross-complaint because it concluded the cross-complaint was a defensive measure, designed to ensure that SNL and Vera's broker and agent would each bear their proportionate share of liability on Vera's complaint.  Vera does not mention this rationale, much less demonstrate that it was an abuse of discretion.  Because the cross-complaint related to liability on Vera's claims against Sellers, the trial court could reasonably have viewed it as intertwined with Vera's claims.  (*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1111 [trial courts need not apportion attorney's fees for issues common to claims for which fees are available and claims for which they are not].)

21

Vera's argument regarding the scope of the fees provision in the purchase agreement fares no better. The purchase agreement here states, in pertinent part, "In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller . . . ." Vera's argument that this clause only applies to claims based in contract is unavailing in the face of directly contrary authority. In *Johnson v. Siegel* (2000) 84 Cal.App.4th 1087, 1090–1091, the buyer of a property sued the seller for fraud and other claims based on the alleged failure to disclose flooding and drainage problems at the property. The purchase agreement there was evidently the same form agreement used here, because its attorney's fees clause read, in pertinent part, " 'In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney's fees and costs from the non-prevailing Buyer or Seller, except as provided in Paragraph 21A.' " (*Id.* at p. 1100.) The court held this provision entitled the seller to an award of attorney's fees even though all of the plaintiff's claims sounded in tort. (*Id.* at p. 1101.) Because the language of the two agreements is identical, the ruling in *Johnson v. Siegel* applies with equal force here.

## B. REL-BC's request for fees

REL-BC cross-appeals the trial court's denial of its request for fees. The trial court denied REL-BC's request because it determined that REL-BC, "[a]s a dissolved entity, lacks the capacity to present its application for attorney's fees." We agree with REL-BC that this was error.

A limited liability company (LLC) "can follow a two-step process when it elects to end its existence. First, the LLC can file a certificate of dissolution. ([Corp. Code,] § 17707.08, subd. (a).) . . . At the second step, the LLC can file a certificate of cancellation once its affairs are wound up. ([Corp. Code,] § 17707.08, subd. (b)(1).) Section 17707.08, subdivision (c) provides that, upon filing the certificate of cancellation, 'a limited liability company shall be canceled and its powers, rights, and privileges shall cease.' " (*DD Hair Lounge, LLC v. State Farm General Ins. Co.* (2018) 20 Cal.App.5th 1238, 1243.) However, the cancellation of an LLC does not completely end its ability to transact its affairs. Corporations Code section 17707.06, subdivision (a) states, "A limited liability company that has filed a certificate of cancellation nevertheless continues to exist for the purpose of winding up its affairs, *prosecuting and defending actions by or against it in order to collect and discharge obligations*, disposing of and conveying its property, and collecting and dividing its assets." (Italics added.) The statute further states in subdivision (b), "No action or proceeding to which a limited liability company is a party abates by the filing of a certificate of cancellation for the limited liability company or by reason of proceedings for its winding up and dissolution." (Corp. Code, § 17707.06, subd. (b).) By the plain language of these statutes, REL-BC cannot be denied its fees merely because it is a dissolved or canceled entity. (Cf. *Wiseman Park, LLC v. Southern Glazer's Wine & Spirits, LLC* (2017) 16 Cal.App.5th 110, 114, fn. 4 [deciding appeal while noting that the appellant was a dissolved LLC].)

Vera defends the trial court's ruling by asserting that the Franchise Tax Board has suspended REL-BC's license. Vera cites

23

nothing in the record to support this statement.  From our review of the record, it appears the Franchise Tax Board had at one point suspended REL-BC, but REL-BC remedied the issue and the Franchise Tax Board subsequently reinstated it in good standing.  Because Vera has not cited anything in the record to indicate that REL-BC is currently suspended or was suspended at the time of the hearing on its fees motion, we reject Vera's argument.

## DISPOSITION

The trial court's judgment is affirmed.  The order granting SNL's request for attorney's fees is affirmed.  The grant of attorney's fees to Buildzig, Plazola, and Blair is affirmed.  The denial of attorney's fees to REL-BC is reversed.  Sellers are entitled to their costs on appeal.

BROWN, J.


WE CONCUR:

STREETER, ACTING P. J.
TUCHER, J.


*Vera v. Rel-BC et al.* (A155807, A156823, A159141)

24

Trial Court:        Alameda County Superior Court

Trial Judge:        Hon. Stephen M. Pulido

Counsel:

McInerney & Dillon, William McInerney, Neil Bui for Plaintiff and Appellant.

Kaufman Dolowich & Voluck for Defendants and Appellants REL-BC, LLC.

Hopkins & Carley, Allonn E. Levy, Jay M. Ross, Mary Cirone for Defendant and Respondent SNL Real Estate Solutions.